JUAN MANUEL PORTELA, peticionario, *v.* TRIBUNAL DEL DISTRITO JUDICIAL DE SAN JUAN, HON. EMILIO S. BELAVAL, JUEZ, demandado.

Núm. 420.—*Sometido:* Mayo 9, 1946. *Resuelto:* Junio 11, 1946.

*Celestino Iriarte, F. Fernández Cuyar* y *H. González Blanes,* abogados del peticionario; *Hon. Procurador General E. Campos Del Toro,* y *Carlos Santana Becerra,* abogados del Juez demandado, quien además compareció personalmente y fué oído.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA emitió la opinión del tribunal.

Allá para el 21 de mayo de 1945 se celebró ante el juez recurrido, como juez de la Corte de Distrito de San Juan a cargo de la sala Núm. 1 de dicha corte, el juicio en un caso de daños y perjuicios seguido por el peticionario contra Eastern Sugar Associates, y quedó el caso sometido al juez. Estando el caso pendiente de resolución, entró en vigor el 26 de marzo de 1946 la Ley núm. 212 para "abolir" la Corte de Distrito de San Juan y "crear" el Tribunal del Distrito Judicial de San Juan (Leyes de 1946 (1) pág. 395). A tenor de las disposiciones de dicha ley, el juez recurrido fué nombrado, el mismo día 26 de marzo de 1946, "Juez de la Sección de Remedios Extraordinarios y Procedimientos Especiales del Tribunal del Distrito Judicial de San Juan." Posteriormente, el peticionario solicitó del juez recurrido resolviera el caso de daños y perjuicios que había quedado pendiente, a lo que se negó el juez por entender que carecía de jurisdicción para ello.

El peticionario solicita un auto de *mandamus* ordenando al juez recurrido proceda a la resolución del caso de daños y perjuicios. Expedido el auto alternativo, compareció el juez recurrido, así como el Procurador General de Puerto Rico en su representación, explicando que, según la interpretación que a la Ley núm. 212 de 26 de marzo de 1946 dan el juez recurrido y sus compañeros del Tribunal de Distrito de San Juan, el juez recurrido sólo tiene jurisdicción o facultad para conocer de aquellos recursos que correspondan a la sección para la cual ha sido nombrado, careciendo por lo tanto de facultad o jurisdicción para conocer del caso del

peticionario, que corresponde a otra sección, la "Sección de lo Civil".

Examinemos, en primer término, las disposiciones de la Ley núm. 212. El artículo primero anuncia que la Corte de Distrito de San Juan queda abolida, y el segundo crea el Tribunal del Distrito Judicial de San Juan. En el tercero y cuarto se determina que la jurisdicción del Tribunal será precisamente la misma que tenía la Corte. El artículo quinto dispone la división del Tribunal en cuatro secciones, la Sección Criminal,(1) la de Relaciones de Familia,(2) la de Recursos Extraordinarios y Especiales,(3) y la de lo Civil,(4) y pasa a exponer los casos de que conocerá cada sección "con arreglo a la jurisdicción" del Tribunal "y para el ejercicio de tal jurisdicción". Añade que cada sección conocerá además de los "remedios auxiliares" y "medidas y procedimientos incidentales" que se "susciten, surjan o se soliciten dentro de las acciones, recursos, procedimientos y asuntos", correspondientes a esa sección. El artículo sexto dispone el nombramiento de dos jueces para la Sección de lo Criminal y uno para cada una de las otras secciones, y expresa que los jueces "tendrán las mismas facultades y atribuciones que por las leyes vigentes corresponden a los jueces de distrito." En el artículo séptimo se dispone que cada uno de los jueces del Tribunal actuará como administrador por un término de un año, siguiendo el turno de rotación que establezca la mayoría. El octavo determina que en caso de

---

(1) Causas criminales y recursos de hábeas corpus "que surjan con motivo de actuaciones de índole penal."

(2) Acciones de divorcio, nulidad de matrimonio, alimentos, filiación, incapacidad, tutela, emancipación, ausencia, adopción, patria potestad, dispensa de parentesco, declaratoria de herederos, autorizaciones y administraciones judiciales, testamentarías, abintestato, *ad perpetuam memoriam*, nombramiento de defensor judicial, hábeas corpus que no correspondan a la sección criminal, y casos de delincuentes juveniles.

(3) *Injunction, mandamus, certiorari*, auto inhibitorio, *quo warranto*, desahucio, reclamaciones de salarios, reclamaciones de bienes muebles, ejecutivos sumarios hipotecarios.

(4) Todos los casos y asuntos que no correspondan a las otras secciones.

inhibición de uno de los jueces, los otros decidirán por mayoría cuál de ellos conocerá del caso, y que si surge un empate el Procurador General hará la designación. El artículo noveno dispone cómo y cuándo los jueces podrán actuar *in bank*. El artículo décimo, reza así:

"Artículo 10.—Todas las acciones, procedimientos, recursos, causas y asuntos civiles y criminales de toda clase, radicados o pendientes a la fecha en que entre en vigor esta Ley en la Corte de Distrito del Distrito Judicial de San Juan por la presente abolida, seguirán ventilándose ante el Tribunal del Distrito Judicial de San Juan al cual y a los jueces de cuyas secciones se le confiere jurisdicción expresa para conocer y seguir conociendo de tales acciones, procedimientos, causas, recursos y asuntos, hasta su resolución final de acuerdo con la distribución que más adelante se ordena én este artículo. Los jueces del Tribunal del Distrito Judicial de San Juan deberán distribuir entre las distintas secciones referidas en el Artículo 5 de esta Ley todos los procedimientos, causas, recursos, acciones y asuntos civiles y criminales antes mencionados en este Artículo, asignando a dichas secciones todos los dichos procedimientos, causas, acciones, recursos y asuntos con arreglo a la naturaleza de los mismos."

Las demás disposiciones de la Ley, referentes casi todas a los otros funcionarios y empleados del Tribunal, sus atribuciones, deberes y compensación, carecen de especial pertinencia.

Tenemos que el artículo seis dispone que cada uno de los jueces del Tribunal tendrá las mismas facultades y atribuciones de un juez de distrito. Pero un juez de distrito tiene facultad para conocer de todos los casos en que su corte tenga jurisdicción. Sin embargo, los artículos cinco y diez de la Ley disponen, en efecto, que cada uno de los jueces del Tribunal de San Juan se ocupará de ejercitar solamente una fracción de las facultades de un juez de distrito, o sea, que conocerá de cierta clase de casos de las varias clases que caben dentro de la jurisdicción del Tribunal. La aparente inconsistencia entre el artículo seis, de un lado, y los artículos cinco y diez, de otro, puede no obstante explicarse,

y se nos ocurren dos explicaciones alternativas. Posiblemente la legislatura quiso decir que cada juez del Tribunal de San Juan tendría las mismas facultades de los jueces de distrito en aquellos casos que correspondieran a su sección, y no en otros casos. O posiblemente la legislatura quiso conferir a los jueces de San Juan todas las facultades de los jueces de distrito, siendo meramente directivas, y no jurisdiccionales o limitativas de la facultad judicial, las disposiciones de los artículos cinco y diez referentes a la distribución del trabajo del Tribunal en cuatro secciones.

Para mejor orientarnos respecto a la intención del legislador, es conveniente examinar la forma en que estuvo constituída la Corte de Distrito de San Juan hasta el 26 de marzo de 1946. Consistía de cuatro jueces,([5]) distribuyéndose el trabajo entre los jueces o salas de la misma de acuerdo con un reglamento redactado por un Consejo Judicial compuesto por los jueces y el Procurador General.([6]) El reglamento([7]) disponía la división de la corte en cuatro salas, la criminal, la civil Núm. 1 (juicios civiles contenciosos), la civil Núm. 2 (asuntos *ex parte,* en rebeldía y mociones) y la civil Núm. 3 (recursos extraordinarios y especiales), ocupando cada uno de los jueces una de las salas por espacio de cinco meses y pasando entonces a otra sala mediante un sistema de rotación. Interpretando un reglamento respecto a la distribución del trabajo en otra corte de distrito (Humacao), resolvimos en *Pastrana* v. *Pastrana,* 57 D. P.R. 213, que el reglamento era meramente directivo, y no afectaba la facultad o jurisdicción de un juez para intervenir en un asunto que correspondiera a otro de acuerdo con el reglamento.

---

([5])Ley núm. 105 de 16 de septiembre de 1925 (Leyes de 1925, pág. 967) y Ley núm. 132 de 14 de mayo de 1937 (Leyes de 1936–1937, pág. 299).

([6])Sección 4, Ley núm. 105, supra.

([7])Reglamento para la Corte de Distrito del Distrito Judicial de San Juán, según revisado y promulgado el 18 de diciembre de 1940.

Esa fué la situación existente cuando la legislatura actuó en 26 de marzo de 1946. En forma clara y definitiva eliminó el sistema de rotación que imperaba en la Corte de Distrito de San Juan, y dispuso que cada uno de los jueces actuara permanentemente en la sección del Tribunal que le correspondiera. Adoptó sustancialmente el mismo sistema prevaleciente en la Corte de Distrito respecto a la distribución del trabajo en cuatro secciones, si bien hizo ciertos cambios en la distribución del trabajo. No dispuso expresamente que el juez nombrado para una sección habría de carecer de jurisdicción o de facultad para intervenir en asuntos que pudieran corresponder a otra sección. Sí dispuso expresamente que al inhibirse el juez de una sección de intervenir en un caso, se designaría otro de los jueces para sustituirle.

No podemos decir, por lo tanto, que de la Ley núm. 212 surja claramente la intención legislativa de alterar radicalmente aquel principio del sistema imperante que determina que las disposiciones respecto a la distribución del trabajo entre los jueces de una corte son directivas y no afectan la facultad o jurisdicción del juez para actuar en cualquier caso en que la corte tenga jurisdicción. No solamente deja de surgir claramente la intención legislativa de limitar las facultades o jurisdicción de los jueces del Tribunal de San Juan, sino que el efecto de tal limitación sería tan perjudicial a la administración de justicia, tan contrario a la tendencia liberalizadora del sistema procesal que ha merecido la aprobación de nuestra legislatura,(8) que no podríamos suponer que tal intención cupiera en el ánimo legislativo de no expresarse en forma clara y terminante. Examinemos por un momento el efecto de la Ley núm. 212 si dispusiera que el juez de una de las secciones del Tribunal de San Juan

(8)Ley núm. 9 de 5 de abril de 1941 ((1) pág. 331), autorizando a la Corte Suprema de Puerto Rico para promulgar reglas de procedimiento ''*con el propósito de simplificar* los mismos y promover una rápida administración de justicia.'' Y véanse las Reglas de Enjuiciamiento Civil aprobadas de conformidad con la ley citada. (60 D.P.R., final del Tomo.)

carece de jurisdicción para conocer de asuntos correspondientes a otras secciones. Tendríamos entonces cuatro cortes de distrito en San Juan, cada una con jurisdicción limitada. Serían nulas aquellas sentencias que dictara el juez de una sección si se determinara luego que de acuerdo con las alegaciones y la prueba el caso realmente correspondía a otra de las secciones. En muchos casos sería difícil determinar cuál de las secciones tendría jurisdicción. Por ejemplo, los "remedios auxiliares" y "procedimientos incidentales" que se "susciten, surjan o se soliciten" dentro de una acción, corresponden, de acuerdo con el artículo quinto de la Ley núm. 212, a la sección a la cual corresponda la acción principal. Pero muchas veces es difícil determinar si un "remedio" o "procedimiento" es incidental a otra acción, o constituye una acción independiente, y ese problema, que en el sistema procesal moderno usualmente carece de importancia, vendría a convertirse en un problema jurisdiccional en el Tribunal de Distrito de San Juan. Si se radica una solicitud de *injunction* o de *mandamus* en San Juan, corresponde a la Sección de Recursos Extraordinarios conocer del caso. Pero si luego de verse el caso resultare improcedente el *remedio* solicitado, y procediere dictar sentencia declaratoria como puede y debe hacerse de acuerdo con las Reglas de Enjuiciamiento Civil sancionadas por la legislatura,[9] carecería el juez de esa sección de jurisdicción para conocer del caso, y habría que comenzar la acción de nuevo ante el juez de la Sección de lo Civil. Una persona que se creyere privada ilegalmente de su libertad en San Juan, y que desconociere los motivos de su detención, no sabría si dirigirse a la Sección de lo Criminal o a la Sección de Relaciones de Familia, puesto que la jurisdicción no podría determinarse hasta que su guardián explicara si la detención surgió "con motivo de actuaciones de índole penal" (Sec-

---

[9] *Núñez Meléndez* v. *Rector,* 65 D.P.R. 864, y véanse las Reglas 54 y 81 de Enjuiciamiento Civil.

ción de lo Criminal) o con otros motivos (Sección de Relaciones de Familia). Una persona que tuviera derecho a indemnización por daños y perjuicios y a un injunction para impedir se continuara ocasionando esos daños, y se viera obligada a litigar el asunto en San Juan, estaría sujeta a defensas jurisdiccionales inevitablemente. De decidir que la acción principal era la de daños, y recurrir a la Sección de lo Civil, la otra parte podría insistir en que la acción principal era la de injunction, de la cual sólo tendría jurisdicción la Sección de Recursos Extraordinarios. De decidir lo contrario, y recurrir a la Sección de Recursos Extraordinarios, podría encontrarse con la defensa contraria: de que la acción principal era la de daños y no la de injunction. Y si no pudiera decidirse por ninguna de las dos secciones, y optara por radicar dos demandas separadas, estaría siempre expuesta a confrontarse con la defensa de que una de las dos demandas era "incidental" a la otra, y que por lo tanto ambas correspondían a una sola sección.

Los fundamentos expuestos nos llevan inevitablemente a la conclusión de que la Ley núm. 212 debe interpretarse en el sentido de crear un solo Tribunal de Distrito de San Juan, y no cuatro, y de que de acuerdo con dicha ley los jueces del Tribunal tienen facultad y jurisdicción para conocer de cualquier asunto que quepa dentro de la jurisdicción del Tribunal, aunque tienen el deber, que les señala la legislatura, de distribuir los asuntos de la corte, tanto los que estuvieren pendientes el 26 de marzo de 1946 como los que surgieren después, de acuerdo con la norma trazada en la ley, y siguiendo esa norma tan fielmente como sea posible sin quebrantar las reglas y principios procesales que en bien de la más rápida y sencilla administración de justicia ha aprobado o sancionado la legislatura.

El juez recurrido tiene por lo tanto facultad y jurisdicción para resolver el caso de daños y perjuicios presentado por el peticionario. Aunque normalmente su deber es no in-

tervenir en casos que correspondan a otras secciones de la corte, en este caso que ya se ha visto ante él y que sólo está pendiente de su decisión, procede que haga uso de la facultad y de la jurisdicción que su cargo le confiere.

*Debe expedirse el auto definitivo de mandamus.*