JOSÉ ANTONIO FERNÁNDEZ ANTONETTI, antes JOSÉ ANTONIO ANTONETTI, peticionario, *v.* CORTE DE DISTRITO DE PONCE, HON. RAMÓN A. GADEA PICÓ, JUEZ, demandado; SUCESIÓN DR. E. FERNÁNDEZ GARCÍA, interventora.

Núm. 1821. *Sometido:* Febrero 13, 1950. *Resuelto:* Marzo 31, 1950.

164

*Leopoldo Tormes García*, abogado del peticionario; *Rafael Cuevas Zequeira, Lionel Fernández Méndez, Manuel Orraca Torres y R. Hernández Matos*, abogados de la interventora; *Hon. Procurador General Vicente Géigel Polanco y Edgar S. Belaval, Procurador General Auxiliar*, como *amici curiae*.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Después de celebrado el juicio en los méritos en una acción de filiación interpuesta por José Antonio Antonetti contra la Sucesión del Dr. Eugenio Fernández García, el Tribunal del Distrito Judicial de San Juan dictó sentencia declarando a Antonetti hijo natural reconocido del Dr. Fernández García. Esa sentencia fué confirmada por este Tribunal. *Antonetti v. Fernández García*, 68 D.P.R. 482. La Corte de Apelaciones para el Primer Circuito desestimó el 9 de noviembre de 1948 la apelación interpuesta contra nuestra sentencia.

Luego la Sucesión radicó un pleito separado contra Antonetti solicitando de la corte de distrito que declarase nula la anterior sentencia. La demanda alegaba que Jesús A. González, Procurador General Auxiliar de Puerto Rico, presidió el juicio del caso de filiación durante los días 20 y 26 de noviembre de 1946, y dictó sentencia a favor de Antonetti el 23 de enero de 1947; que González actuó a base de un nombramiento *ultra vires* héchole por el Gobernador; que durante los días antes mencionados Borinquen Marrero era el juez de la Sala de Relaciones de Familia del Tribunal del Distrito Judicial de San Juan y se encontraba en el cumplimiento de los deberes inherentes a su cargo y era el único juez autorizado por ley para dictar sentencia en el caso de filiación; que González actuó a sabiendas de que (1) el Juez Marrero estaba actuando normalmente en el cumplimiento

de los deberes de su cargo, que (2) el Secretario del tribunal de distrito no había certificado al Gobernador hechos algunos que exigiesen a éste ordenar a otro juez de distrito que sustituyera al juez en propiedad, que (3) él (González) no era un juez de distrito y no había sido confirmado como tal por el Senado de Puerto Rico, y que (4) si el juez en propiedad estaba incapacitado o no podía actuar, el juez de distrito general fué el que debió actuar en su lugar. La demanda alegaba, además, que aun cuando se considerase legal el nombramiento de González, la sentencia era nula porque éste nunca prestó el juramento exigido por ley.

El demandado solicitó sentencia sumaria. Con varias certificaciones, declaraciones juradas y estipulaciones presentádasle, la corte de distrito dictó resolución declarando sin lugar la moción. Expedimos el auto de *certiorari* para revisar esta resolución. El Procurador General comparece aquí como *amicus curiae* y solicita la revocación de dicha resolución.

■ Al denegar la moción de sentencia sumaria, la corte inferior dijo, entre otras cosas, que existía una genuina controversia en cuanto a los hechos. No estamos de acuerdo. Por el contrario, no hay controversia alguna en cuanto a los hechos con respecto al *status* de González y del Juez Marrero en las fechas en cuestión. El único problema es si bajo estos hechos incontrovertidos la sentencia dictada por el primero era nula. Toda vez que ésa es puramente una cuestión de derecho, la corte de distrito, al considerar la moción de sentencia sumaria, debió haber dictado una sentencia final a favor de la parte victoriosa. Regla 56, Reglas de Enjuiciamiento Civil; *Hettinger & Co.* v. *Tribunal de Distrito*, 69 D.P.R. 137; véase *González* v. *Gallardo, Comisionado*, 62 D.P.R. 275, 289, confirmado en 143 F.2d 947 (C.C.A. 1, 1944). Cf. *Ramos* v. *Pueblo*, 67 D.P.R. 640; *Gaztambide* v. *Sucn. Ortiz*, 70 D.P.R. 412; *Boulon* v. *Pérez*, 70 D.P.R. 988.

■ En virtud de certificaciones, declaraciones juradas y estipulaciones, la corte inferior tuvo ante sí, al considerar

la moción del demandado solicitando sentencia sumaria, los siguientes hechos no controvertidos: El 15 de noviembre de 1946 el Procurador General sometió al Gobernador el nombre de Jesús A. González, Procurador General Auxiliar, para actuar como juez sustituto del Tribunal del Distrito Judicial de San Juan, "durante la ausencia del Hon. Borinquen Marrero." El Procurador General había concedido "licencia de quince días al Hon. Borinquen Marrero Ríos, entonces Juez del Tribunal de Distrito de San Juan, a partir del día 18 de noviembre de 1946, previa solicitud verbal que le hiciera personalmente este último, y en atención a que tenía que dedicar todo su tiempo al *estudio* de varios casos sometidos a su consideración por esperarse en el inmediato futuro su nombramiento como Juez Asociado del Tribunal Supremo de Puerto Rico." (Bastardillas nuestras.)

El 18 de noviembre de 1946 el Gobernador firmó una resolución en la que decía que en vista del hecho de que el Procurador General "ha concedido una licencia de 15 días, a partir del día 18 de noviembre de 1946" al Juez Marrero, por la presente el Gobernador designa a González "para actuar como Juez sustituto" del referido tribunal "durante la ausencia del Hon. Borinquen Marrero, o hasta nueva orden." El 17 de enero de 1947 el Gobernador Interino firmó la siguiente orden:

"Por Cuanto, el Hon. Borinquen Marrero, Juez del Tribunal del Distrito Judicial de San Juan estará ausente de la Corte el día 21 de enero de 1947.

"Por tanto, yo, Rafael Buscaglia, Gobernador Interino de Puerto Rico, por virtud de las facultades que me confiere la ley, por la presente designo al Lcdo. Jesús A. González, Procurador General Auxiliar del Departamento de Justicia, para actuar como Juez Sustituto del Tribunal del Distrito Judicial de San Juan durante la ausencia del juez en propiedad o hasta nueva orden."

Los récords del Tribunal del Distrito Judicial de San Juan demuestran que el único juez que actuó en la Sala de Rela-

ciones de Familia desde el 18 al 26 de noviembre, 1946, ambos días inclusive, y el 23 de enero de 1947, fué el Juez Sustituto González. Estos récords demuestran asimismo que durante estos mismos días el Juez Marrero no actuó en dicho Tribunal en forma o manera alguna. El Juez Marrero actuó sólo el 24 de enero de 1947 en la Sala de Relaciones de Familia.

González no prestó juramento del cargo en relación con sus deberes como sustituto del Juez Marrero. Prestó el juramento exigido por la ley como Procurador General Auxiliar el 29 de junio de 1945, y ocupó dicho cargo hasta el 19 de abril de 1949, en que fué nombrado juez de distrito general. El Secretario del Tribunal de Distrito de San Juan no envió al Gobernador solicitud alguna para que se designara un juez que sustituyera a otro juez de dicho Tribunal durante noviembre, 1946 y enero, 1947.

El Senado de Puerto Rico no estaba en sesión durante el tiempo que actuó González en la corte inferior en relación con este caso. Mientras el caso de filiación estaba pendiente en la corte de distrito, en este Tribunal y en la Corte de Apelaciones para el Primer Circuito, la Sucesión no levantó objeción alguna a los nombramientos, al juramento o a las cualificaciones de González para actuar como sustituto del Juez Marrero en dicho tribunal en las fechas del juicio y de la sentencia. El 23 de enero de 1947 el Gobernador Interino nombró a González para que actuara como Juez Sustituto en la Corte de Distrito de Arecibo, empezando el 27 de enero de 1947 y mientras durara la ausencia del juez en propiedad o hasta nueva orden, con motivo de estar dicho juez enfermo.

Después de exponer los hechos antes reseñados, la corte de distrito en su resolución manifestó que había llegado a seis conclusiones de derecho. Discutiremos cada una de estas conclusiones durante el curso de esta opinión. La primera es que durante las fechas mencionadas el Juez Marrero "se encontraba ejerciendo sus funciones de Juez de la Sala de

Relaciones de Familia del Tribunal de Distrito de San Juan . . . encontrándose en tales fechas, en el pleno desempeño de sus deberes, resolviendo casos sometidos a su consideración."

Sin embargo, los hechos incontrovertidos nos llevan a la conclusión contraria. El nombramiento oficial héchole a González por el Gobernador dice que nombraba a González para que actuara durante la ausencia del Juez Marrero porque el Procurador General había concedido al Juez Marrero una licencia de 15 días, empezando el 18 de noviembre de 1946. Y los récords de la corte demuestran que el 20 y el 26 de noviembre el Juez Marrero no actuó ante dicho Tribunal, siendo González el que actuaba. Lo antes dicho, de su faz, contradice la conclusión de la corte inferior.

La corte de distrito no obstante aparentemente fué de opinión que sólo el Juez Marrero podía válidamente actuar porque el Procurador General había indicado al Gobernador que el Juez Marrero había solicitado una licencia de 15 días con el fin de *estudiar* los casos que tenía sometidos. Suponemos, sin decidirlo, que esta manifestación del Procurador General puede tomarse como que modifica los términos de la orden del Gobernador que dice escuetamente que se nombra a González porque el Juez Marrero estará ausente con licencia de 15 días. Pero aun bajo tal suposición, no podemos convenir en que el Juez Marrero estaba actuando en el Tribunal durante ese período. Por el contrario, se retiraba completamente del tribunal con licencia. El hecho de que el Juez Marrero durante su licencia estuviera estudiando, y no resolviendo, los casos sometídosle, no quiere decir que él estuviera desempeñando las funciones del Tribunal. Ése fué sencillamente el motivo para concederle la licencia. El récord no demuestra intención alguna de que él iba a actuar en corte durante esa época, bien sea con el fin de dictar sentencias y resoluciones en casos ya sometídosle y que tenía bajo estudio o con el fin de celebrar vistas sobre cuestiones nuevas. Y surge del récord que él no desempeñó función alguna en la corte durante ese período.

No podemos convenir con la Sucesión en que del récord aparece que el Juez Marrero actuaría en cámara durante tal período. Véase el artículo 27, Código de Enjuiciamiento Civil, ed. de 1933. Tampoco demuestra el récord que él actuaba en cámara durante ese tiempo. Mientras estuvo en vigor la licencia del Juez Marrero, éste cesó temporalmente en el desempeño de sus funciones como juez y se hizo necesario el nombramiento de un juez sustituto. De otro modo, la licencia concedídale meramente equivaldría a concederle permiso al juez para suspender las vistas, para lo cual la ley no contiene disposición alguna.

■ El problema en cuanto a la autoridad que tenía González para actuar el 23 de enero de 1947 requiere consideración separada. Arguye la Sucesión que el segundo nombramiento de González dice que el Juez Marrero estaría ausente durante el día 21 de enero, mientras que González no actuó en dicho día 21 sino durante el 23. Pero el segundo nombramiento no dice que era para el 21. Más bien dice que González actuará durante la ausencia del Juez Marrero. El "Por Cuanto" que decía que el Juez Marrero estaría ausente de la Corte el día 21 de enero no era enteramente correcto; pero eso no afectó la parte dispositiva de la orden nombrando a González durante la ausencia del Juez Marrero. Y los récords de la Sala de Relaciones de Familia demuestran que González, y no el Juez Marrero, fué el que actuó en dicho Tribunal el día 23 de enero. En ausencia de prueba por parte de la Sucesión al efecto de que el Juez Marrero no estuvo ausente el 23 de enero, el segundo nombramiento autorizó a González a dictar sentencia en el caso de filiación durante dicho día.

■ En virtud de las anteriores consideraciones, la corte de distrito cometió error en su primera conclusión de derecho al efecto de que durante las fechas envueltas el Juez Marrero se encontraba "en el pleno desempeño de sus deberes, resolviendo casos sometidos a su consideración". Por el contrario, los hechos incontrovertidos demuestran que el Juez

Marrero estuvo temporalmente ausente durante dichos días. Y una vez que se acepta que éstos son los hechos, se admite que el Gobernador tenía autoridad para nombrar un juez sustituto para el Juez Marrero a tenor con el artículo 21 del Código de Enjuiciamiento Civil, ed. de 1933. Esto es así porque el artículo 21 provee tal nombramiento cuando el juez en propiedad no puede actuar debido a "enfermedad o ausencia de la Isla, o por otra causa . . .". Y cuando el juez en propiedad está ausente con licencia, el caso obviamente cae bajo la frase "o por otra causa".

No obstante, aun cuando hemos concluído que el Gobernador tenía autoridad bajo los hechos aquí expuestos para nombrar un juez sustituto para el Juez Marrero a tenor con el artículo 21, todavía debemos resolver la cuestión de si González fué válidamente nombrado como tal juez sustituto. En su segunda conclusión de derecho la corte de distrito resolvió que su nombramiento era nulo bajo la teoría de que en caso de enfermedad, inhibición o ausencia de uno de los jueces en propiedad del Tribunal de San Juan, a tenor con nuestras leyes, sólo podía éste ser sustituído temporalmente por uno de los jueces de distrito generales, otro juez del Tribunal de San Juan, o un juez de una de las cortes de distrito de Puerto Rico. Por motivos que más adelante indicaremos, creemos que esta conclusión de derecho fué errónea.

El Tribunal del Distrito Judicial de San Juan fué creado por la Ley núm. 212, Leyes de Puerto Rico, 1946.(¹) El artículo 8 dispone que otro juez del Tribunal actuará en lugar del juez en propiedad de una de las Salas si éste se inhibe en cualquier caso específico. Pero el artículo 8 se limita a casos de inhibición. Nada provee en cuanto al nombramiento de un sustituto para un juez en propiedad de una de las Salas si éste se ausenta con licencia o por algún otro motivo.

El artículo 16 de la Ley núm. 212 dispone que, salvo en cuanto al procedimiento establecido en el artículo 8 para el

(¹) Véase la Ley núm. 58, Leyes de Puerto Rico, 1930 (pág. 419).

caso de inhibición, las disposiciones del artículo 3 de la Ley núm. 63, Leyes de Puerto Rico, 1940 (pág. 451), serán aplicables a los jueces del Tribunal de San Juan.

El artículo 1 de la Ley núm. 63 crea el cargo de juez de distrito general. El artículo 3, según fué enmendado por el artículo 2 de la Ley núm. 143, Leyes de Puerto Rico, 1942 ((1) pág. 809), prescribe como sigue:

"Mediante la correspondiente autorización escrita del Procurador General de Puerto Rico, el Juez de Distrito General sustituirá al juez de cualquier corte de distrito de la Isla, en aquellos casos civiles o criminales en que, por razón de enfermedad, inhabilitación, inhibición, o ausencia del juez en propiedad de la corte de distrito correspondiente, o porque dicho cargo esté vacante, proceda la sustitución; *Disponiéndose*, que si en casos de acumulación de trabajo, o de urgencia del mismo, cualquier juez de distrito se encuentra imposibilitado de desempeñar rápidamente el trabajo de su distrito, el Procurador General designará y asignará al referido Juez de Distrito General para que actúe como juez de distrito adicional en dicho distrito y desempeñe todos los deberes judiciales como juez del mismo por el tiempo que lo requieran los asuntos de dichos distritos; *Disponiéndose, además*, que en tales casos el Juez de Distrito General tendrá los mismos poderes, deberes y autoridad conferidos a los jueces de las cortes de distrito."

El artículo 6 de la Ley núm. 63, según fué enmendado por la Ley núm. 143 de 1942, provee que: "Nada de lo contenido en la presente se interpretará en el sentido de abrogar ni en forma alguna menoscabar o afectar las disposiciones contenidas en el artículo 21 del Código de Enjuiciamiento Civil vigente en Puerto Rico."

El artículo 21 del Código de Enjuiciamiento Civil, ed. de 1933, dispone como sigue:

"Un juez de distrito puede celebrar sesión en otro distrito en Puerto Rico a petición del juez de aquel en que dicha sesión haya de celebrarse; y cuando por enfermedad o ausencia de la Isla, o por otra causa, las sesiones de una corte no pudieren celebrarse en cualquier distrito por el juez de la misma, el secretario enviará una certificación del hecho al Gobernador, quien inme-

diatamente ordenará a otro juez de distrito que celebre dicha sesión; *Disponiéndose,* que si los jueces propietarios estuviesen impedidos por razón de sus ocupaciones, el Gobernador nombrará un juez sustituto para actuar durante el tiempo en que el juez propietario no pueda hacerlo; *Y disponiéndose, además,* que el Gobernador, a propuesta del Attorney General, podrá, si el servicio público lo exigiere, ordenar a uno o más jueces de distrito de una o más cortes de distrito, que sean provisionalmente transferidos a cualquier corte de distrito de la Isla en que el servicio público lo requiriere; *Y disponiéndose, también* que la transferencia de un juez de una a otra corte, de acuerdo con las disposiciones anteriores, nunca podrá exceder de treinta (30) días."

Uno de los motivos por qué la Legislatura expresamente dispuso en el artículo 6 de la Ley núm. 63 que el artículo 21 del Código de Enjuiciamiento Civil permanecería en vigor, no empece la aprobación del artículo 3 de la Ley núm. 63 proveyendo para un juez de distrito general, fué obviamente permitir al Gobernador que continuara haciendo nombramientos a tenor con el artículo 21 en aquellos casos en que el juez de distrito general no estaba disponible.[2] El artículo 21 prescribe que cuando un juez de distrito está impedido de actuar debido a enfermedad, ausencia o por otra causa y el secretario de la corte envía al Gobernador una certificación a ese efecto, éste puede ordenar a algún otro juez de distrito que sustituya al juez en propiedad. Pero la Legislatura previó que podría darse el caso que ningún juez en propiedad de alguna otra corte de distrito pudiera estar disponible para este fin. En consecuencia inmediatamente después insertó lo siguiente: *"Disponiéndose,* que si los jueces propietarios estuviesen impedidos por razón de sus ocu-

---

[2] La Ley núm. 339, Leyes de Puerto Rico, 1947 ((1) pág. 581), creó dos plazas de jueces de distrito generales. La misma no afecta nuestro problema ya que las secciones 3 y 7 de la misma son sustancialmente idénticas a las secciones 3 y 6, respectivamente, de la Ley núm. 63 de 1940, según fué enmendada por la Ley núm. 143 de 1942. El artículo 21 del Código de Enjuiciamiento Civil por tanto entraría en juego cuando no estuviera disponible ninguno de los tres jueces generales.

paciones, el Gobernador nombrará un juez sustituto para actuar durante el tiempo en que el juez propietario no pueda hacerlo; . . ."

Somos de opinión que el anterior *disponiéndose* quiere decir que bajo el artículo 21 el Gobernador puede prescindir de los jueces en propiedad al designar un juez sustituto para actuar temporalmente en lugar de un juez en propiedad que no puede actuar durante un corto período. Esto se torna aun más claro cuando nos fijamos en la manera en que la Legislatura usó la frase "juez sustituto". Dondequiera que el artículo 21 habla de usar un juez en propiedad, dice que el Gobernador "ordenará" a tal juez que actúe fuera de su distrito. Esto contrasta con la terminología del primer *disponiéndose* del artículo 21 al efecto de que el Gobernador "nombrará un juez sustituto". Además, tomamos conocimiento judicial de que ha sido la práctica administrativa durante un número de años que el Gobernador bajo circunstancias adecuadas nombre a tenor con el primer *disponiéndose* del artículo 21 jueces sustitutos que no son miembros de la judicatura en propiedad. Frecuentemente un Procurador General Auxiliar ha sido así designado. Y la Legislatura indudablemente tenía conocimiento de esta práctica cuando expresamente dispuso en el artículo 6 de la Ley núm. 63, según fué enmendada por la Ley núm. 143 de 1942, que el artículo 21 permanecería intacto no obstante la creación del cargo de juez de distrito general.

Si bien no hemos discutido el problema en detalle, hemos resuelto que un abogado o un Procurador General Auxiliar puede ser nombrado bajo el artículo 21 como sustituto de un juez de distrito en propiedad mientras éste goza de licencia. *Balbaño* v. *Cintrón*, 53 D.P.R. 844, 847; *García* v. *Suárez*, 56 D.P.R. 414, 422. En estos dos casos se consideró y se distinguió el caso de *Annoni* v. *Blas Nadal's Heirs*, 94 F.2d 513 (C.C.A. 1, 1938), que más adelante se discute en detalle. Y en el lenguaje a las págs. 514–15 del caso de *Annoni* creemos que la Corte de Apelaciones insinúa que en

ausencia de un juez en propiedad, procede el nombramiento de un juez sustituto fuera de la judicatura en propiedad. *Cf.* Sección 2 de la Ley de marzo 10, 1904, Leyes de Puerto Rico, 1904, pág. 94.(³)

Convenimos que bajo los estatutos antes citados un nombramiento de un juez de distrito o un juez de distrito general habría sido adecuado bajo las circunstancias de este caso. Y uno de los otros jueces del Tribunal de San Juan pudo haber actuado por el Juez Marrero. Véase *Portela* v. *Tribunal de Distrito*, 66 D.P.R. 279. Pero en ausencia de prueba en contrario, debe presumirse que el Gobernador cumplió con la ley. La prueba de la Sucesión sólo demostró que los otros jueces del Tribunal de San Juan, los varios jueces de distrito y el juez de distrito general estaban actuando en esa época; nada estableció en cuanto al estado de sus trabajos. Por consiguiente presumimos que todos estos jueces en propiedad estaban "impedidos por razón de sus ocupaciones", haciendo necesario el nombramiento de un juez sustituto que no era miembro de la judicatura en propiedad, según lo dispone el artículo 21 del Código de Enjuiciamiento Civil. Véase *Hiatt, Warden* v. *Brown*, 339 U. S. 103.

█ La Sucesión alega que el primer *disponiéndose* del artículo 21 significa que si el juez en propiedad de una corte de distrito no puede actuar, el Gobernador puede nombrar *uno de los otros jueces de distrito en propiedad* durante el

---

(³) Llegamos a este resultado al interpretar el texto inglés del artículo 21, ya que originalmente fué aprobado en ese idioma. Leyes de Puerto Rico, 1904, pág. 194. Sin embargo, notamos de paso que, si bien es una traducción un tanto incorrecta, la versión española del artículo 21 es aún más clara en apoyo de nuestra conclusión. En español el primer *disponiéndose* lee como sigue: "*Disponiéndose*, que si los jueces propietarios estuviesen impedidos por razón de sus ocupaciones, el Gobernador nombrará un juez sustituto para actuar durante el tiempo en que el juez propietario no pueda hacerlo". De predominar esta versión, una traducción adecuada de la misma al inglés sería la siguiente: "*Provided*, that if the regularly appointed judges are otherwise engaged, the Governor will appoint a substitute judge to act during the time the regular judge is unable to act." De cualquier modo, tanto bajo la versión española del artículo 21 como bajo la inglesa, llegamos al mismo resultado.

tiempo en que el juez en propiedad no pueda actuar. Sostiene que su teoría encuentra apoyo en el último *disponiéndose* del artículo 21 al efecto de que el traslado de un juez de una a otra corte, *de acuerdo con las disposiciones. anteriores*, nunca podrá exceder de treinta días. Por los motivos ya indicados, no estamos conformes con esta interpretación del artículo 21. Resolvemos, contrario a la segunda conclusión de derecho de la corte de distrito, que el Gobernador estaba autorizado para nombrar al Procurador General Auxiliar González como juez sustituto temporero del Juez Marrero bajo los hechos antes expuestos, a tenor con el primer *disponiéndose* del artículo 21.

La Sucesión también alega que González no fué válidamente *nombrado* porque el Secretario del Tribunal de San Juan no envió al Gobernador la certificación exigida por el artículo 21. La corte de distrito no mencionó este requisito en su resolución. Suponemos que en el artículo 21 la Legislatura tuvo por miras disponer que este requisito se aplique cuando el Gobernador actúa bajo el primer *disponiéndose*. Pero el artículo 14 del Acta Orgánica, 48 U.S.C. sec. 778, provee en parte que "el Procurador General tendrá a su cargo la administración de justicia en Puerto Rico. . .". De conformidad con el artículo 49, los secretarios de las cortes de distrito siempre han sido considerados como subalternos del Procurador General para fines administrativos. El artículo 21 debe leerse a la luz de esas circunstancias. Es inmaterial si el Gobernador recibió notificación de la necesidad de un nombramiento directamente del secretario o a través del jefe de éste, el Procurador General. En verdad, se ajusta más a una buena administración el que la certificación llegue al Gobernador de manos del Procurador General más bien que directamente del Secretario. Por tanto, creemos que la notificación hecha por el Procurador General al Gobernador de que el Juez Marrero estaría con licencia en el mes de noviembre fué suficiente cumplimiento con el requisito del artículo 21 sobre la certificación del Secretario. Además,

aun cuando el Procurador General no hubiera enviado tal notificación al Gobernador, los nombramientos no serían nulos. La disposición en cuanto a la certificación es puramente administrativa. En su consecuencia, si el asunto llega a manos del Gobernador sin la certificación formal, éste está autorizado por el artículo 21 para remediar la situación nombrando un juez sustituto.

El otro punto suscitado por la Sucesión trata del artículo 49 del Acta Orgánica, 48 U.S.C. sec. 873. Hemos interpretado el artículo 21 como que quiere decir que el Gobernador, sin el consentimiento del Senado, tiene poder para nombrar durante un período temporero un juez sustituto que no sea miembro de la judicatura en propiedad. Sostiene la Sucesión que el artículo 21 así interpretado viola el artículo 49 del Acta Orgánica. Este último artículo prescribe que todo juez "cuyo nombramiento por el Presidente no esté dispuesto por ley, será nombrado por el Gobernador con el concurso y consentimiento del Senado de Puerto Rico." La corte de distrito convino con la Sucesión, diciendo en su tercera conclusión de derecho que los nombramientos de González fueron hechos en violación del artículo 49 toda vez que no fué nombrado con el consentimiento del Senado.

El artículo 26 del Acta Orgánica, 48 U.S.C. sec. 812, dispone que los nombramientos de receso de jueces pueden ser hechos por el Gobernador únicamente y "tendrán efectividad hasta que sean desaprobados o hasta que el Senado declare terminado su próximo período de sesiones." *González v. Corte*, 62 D.P.R. 160, 162–4. Pero los artículos 49 y 26 sólo se aplican a nombramientos regulares de término fijo o nombramientos de receso para los mismos mientras el Senado no esté en sesión. No podemos convenir en que estos artículos prohiben a la Legislatura aprobar una disposición suplementaria para nombramiento por el Gobernador únicamente de jueces sustitutos que actuarán durante un corto período en una emergencia, con el fin de evitar un trastorno temporal

en la administración de justicia. Bajo estas circunstancias, un nombramiento de receso no es posible porque no existe vacante alguna en el cargo permanente. Tal disposición está de acuerdo con la doctrina de que la ley aborrece las vacantes porque entorpecen la continuación de la administración de los asuntos públicos. Véanse *Chandler* v. *Chandler*, 140 P. 858 (Kans., 1914) ; *Annotation*, L.R.A. 1916E 834, 836; *González* v. *Corte*, supra, págs. 163, 165.

Esta cuestión no fué discutida expresamente en *Annoni* v. *Blas Nadal's Heirs*, supra. En dicho caso un Procurador General Auxiliar fué nombrado para que actuara como juez sustituto en una corte de distrito porque el juez en propiedad de la misma se había inhibido. La Corte de Apelaciones resolvió que no podía actuar en vista de la disposición del artículo 84 del Código de Enjuiciamiento Civil al efecto de que cuando un caso está pendiente ante una corte de distrito y el juez en propiedad se inhibe por cualquier motivo, el caso *debe* trasladarse a otra corte de distrito. Al mismo efecto, *Saavedra* v. *Corte*, 43 D.P.R. 288. Pero esto no resolvió que el artículo 49 del Acta Orgánica prohibía legislación insular como el artículo 21 del Código de Enjuiciamiento Civil, que permite el nombramiento temporal de un juez sustituto por el Gobernador únicamente. Al contrario, el único lenguaje que la Corte de Apelaciones usó que pudiera ser aplicable a este punto, parece ser en sentido contrario. Luego de decir que cuando un juez de distrito se inhibe para ver *un solo caso pendiente*, el mismo *debe* ser trasladado a otra corte de distrito de conformidad con el artículo 84 del Código de Enjuiciamiento Civil, dijo la corte a la pág. 515: "El único cargo que puede ser cubierto por el Gobernador nombrando un sustituto es aquél para el cual puede nombrarse un sustituto siempre y cuando que las condiciones contenidas en la sección 2 de la ley reorganizando la Judicatura en Puerto Rico, o en el artículo 21 del Código de Enjuiciamiento Civil de 1911, Estatutos Revisados de 1913, sec. 5005, existan y

para tramitar toda la labor judicial que en el curso ordinario pueda recaer en el mismo." (⁴)

Resolvemos, contrario a la tercera conclusión de derecho de la corte de distrito, que el artículo 49 del Acta Orgánica no prohibe a la Legislatura disponer, según hizo en el artículo 21, que el Gobernador, sin el consentimiento del Senado, puede nombrar un juez sustituto para un período temporal. No se presentan más ataques a la validez de los nombramientos de González. Por tanto concluímos que éste fué válidamente nombrado por el Gobernador a tenor con el artículo 21 del Código de Enjuiciamiento Civil para actuar durante los períodos aquí envueltos como juez sustituto del Juez Marrero.

▉ Sin embargo, la Sucesión alega que aun cuando resolvamos que los nombramientos de González fueron válidos, la sentencia en el caso de filiación es nula porque González no prestó el juramento del cargo como juez sustituto, según lo exige el artículo 10 del Acta Orgánica, 48 U.S.C. sec. 874, y el artículo 186 del Código Político, según fué enmendado por la Ley núm. 93, Leyes de Puerto Rico, 1936 ((1) pág. 491). La corte de distrito convino con esta contención. Resolvió en su quinta conclusión de derecho que el no haber González prestado el juramento anuló todas sus actuaciones como juez sustituto.

Antonetti y el Procurador General, quien comparece aquí como *amicus curiae* en apoyo de la posición de Antonetti, indican que el artículo 186, según fué enmendado por la Ley núm. 93, requiere exactamente el mismo juramento de todos

---

(⁴) Antonetti también alega que toda vez que el Senado no estaba en sesión durante los períodos en que actuó el Juez González, los nombramientos de éste pueden sostenerse como nombramientos de receso autorizados por el artículo 26 del Acta Orgánica. Pero no podemos interpretar un nombramiento sustituto temporal como un nombramiento de receso. Además, un nombramiento de receso es posible solamente mientras el Senado no está en sesión para cubrir una vacante o sustituir un funcionario cuyo término ha expirado bajo legislación fijando un término fijo sin cláusula de *holding-over*. *González v. Corte*, supra. Y aquí el Juez Marrero, si bien temporalmente ausente, todavía tenía el título legal al cargo bajo un término que aún no había expirado.

180

los funcionarios ejecutivos, legislativos y judiciales.(5)   Por consiguiente sostienen que el juramento que prestó González como Procurador General Auxiliar fué suficiente para cubrir sus actuaciones como juez sustituto y que era innecesario repetir este juramento meramente debido a la diferencia en la naturaleza de su trabajo como juez.   Por tanto, insisten en que González era un juez *de jure* no obstante no haber prestado el juramento especial como tal.   Afirman que este caso es como aquel de un juez de distrito en propiedad a quien se le ordena que actúe en otro distrito a tenor con el artículo 21 del Código de Enjuiciamiento Civil.   Arguyen que ni tal juez de distrito en propiedad ni González bajo las circunstancias de este caso vienen obligados a prestar un juramento para poder actuar como juez sustituto.   Pero *cf. El Pueblo* v. *Juliá et al.*, 25 D.P.R. 284, 290.(6)

Antonetti y el Procurador General presentan un argumento en la alternativa en apoyo de su teoría de que González actuó como un juez *de jure* en el caso de filiación.   Alegan que bajo la regla de la minoría, que solicitan adoptemos, el

---

(5) El artículo 186, según fué enmendado por la Ley núm. 93, no está traducido correctamente a la versión inglesa.   El mismo debiera leer en parte que "The members of the Legislature of Puerto Rico, all executive, administrative and judicial officials, and all employees of the Insular Government of Puerto Rico, its dependencies, boards, commissions, and organizations created by law, shall before they enter upon the duties of their respective offices or employments, take and sign the following oath or affirmation. . .".

(6) La Sucesión concebiblemente podría replicar que las ramas ejecutiva, legislativa y judicial del gobierno funcionan independientemente una de otra bajo la doctrina de la separación de poderes, *Buscaglia* v. *District Court of San Juan*, 145 F.2d 274, 283–84 (C.C.A. 1, 1944), *certiorari* denegado 323 U. S. 793; que la disposición del artículo 14 del Acta Orgánica. de que el Procurador General tendrá a su cargo la "administración de justicia" no tiene por miras que él dirigirá la función judicial de las cortes, según se distingue ésta de la función administrativa; que González prestó su juramento original en relación con sus deberes en la rama ejecutiva. como un subalterno del Procurador General; y que si González va a dejar a un lado temporalmente estos deberes subordinados con el fin de ejercer,. fuera de las órdenes del Procurador General, las funciones diferentes e independientes de juez en una rama del gobierno ajena a la ejecutiva, debe prestar un juramento especial para ello.   Por los motivos que se desprenden del cuerpo de la opinión, dejamos sin resolver esta cuestión.

no prestar un juramento no priva al funcionario de su naturaleza *de jure* a no ser y hasta que sea impugnado como tal en un procedimiento adecuado radicado por el Estado.

No obstante, concluímos más adelante que la sentencia en el caso de filiación es válida por el fundamento de que González actuó como un juez *de facto* al oír el caso y dictar sentencia. Por consiguiente es innecesario considerar la contención de que González actuó como un juez *de jure* en dicho caso no obstante no haber prestado el juramento especial como juez sustituto.

▮▮▮ Pasemos al problema de si González actuó como un juez *de facto* en el caso de filiación. En su cuarta conclusión de derecho la corte de distrito resolvió que González no actuó como juez *de facto* en dicho caso. La doctrina *de facto* es un principio de derecho que imparte validez a los actos oficiales de personas que, so color de autoridad, ejercen cargos que existen legalmente y en los cuales el público o terceras personas están interesados, cuando el cumplimiento de tales actos oficiales es para beneficio del público o de terceras personas, y no para su beneficio personal. La necesidad de esta doctrina es manifiesta: sería irrazonable exigirle al público que investigue de antemano el título de los funcionarios con quienes se propone tratar, con el fin de averiguar si se puede confiar o no en la autoridad que asumen. *Dalton* v. *Fabius River Drainage Dist.*, 184 S. W.2d 776, 782 (Mo., 1945); *Mansur* v. *Morris*, 196 S. W.2d 287, 295 (Mo., 1946); *State* v. *Levy*, 34 A.2d 370 (Vt., 1943); Constantineau *on the De Facto Doctrine*, secs. 1–3, págs. 3–5; Jarrett, *De Facto Public Officers: The Validity of their Acts and Their Rights to Compensation*, 9 So. Calif. L. Rev. 189, 217, *et seq.*

Existen tres requisitos que deben cumplirse antes de que se resuelva que una persona es un funcionario *de facto*. Primeramente, debe haber un cargo *de jure* con el fin de que haya un funcionario *de facto*. *Norton* v. *Shelby County*, 118 U. S. 425, 441 *et seq.; Annoni* v. *Blas Nadal's Heirs*, supra, pág. 515, y casos citados; *Howell* v. *Howell*, 208 S.

W.2d 22 (Ark., 1948); *Bodcaw Lumber Co. of Louisiana, Inc.* v. *Jordan*, 14 S. W.2d 98, 101 (La., 1943); *Annotation*, 99 A.L.R. 294; *Anderson* v. *State*, 195 S. W.2d 368 (Tex., 1946); Constantineau, supra, sec. 26, pág. 39; 2 Dillon *on Municipal Corporations*, 5ta. ed., sec. 518, pág. 841. *Cf.* Jarrett, supra, págs. 201–11; 86 U.Pa.L.Rev. 551; *Kimble* v. *Bender*, 196 A. 409, 415 *et seq.* (Md., 1938).

Creemos que no puede haber cuestión alguna en cuanto a la existencia aquí de un cargo *de jure*. El cargo de Juez de la Sala de Relaciones de Familia del Tribunal de Distrito del Distrito Judicial de San Juan fué debidamente creado por la Ley núm. 212, Leyes de Puerto Rico, 1946 ((1) pág. 395); véase *Portela* v. *Tribunal de Distrito*, 66 D.P.R. 279. Y los nombramientos de González le autorizaron a actuar como juez sustituto en todos los asuntos pendientes en dicha Sala durante las ausencias de su juez en propiedad.

El caso de *Annoni* es distinguible. Como ya hemos visto, en dicho caso se había nombrado un Procurador General Auxiliar para ver un caso pendiente porque el juez de distrito en propiedad se había inhibido. La Corte de Apelaciones resolvió que la sentencia dictada luego de una vista en los méritos por dicho juez sustituto era nula. Resolvió que no era un juez *de facto* porque no había cargo *de jure* alguno que cubrir. Su razonamiento sobre este punto fué como sigue (pág. 515): "No existe un cargo *de jure* a cubrirse bajo las leyes de Puerto Rico en caso de que el juez en propiedad se inhiba para ver un solo *caso pendiente*. El caso *debe* ser trasladado a otro distrito de conformidad con las disposiciones del artículo 84. El único cargo que puede cubrirse por el Gobernador mediante el nombramiento de un sustituto es aquel para el cual puede nombrarse un sustituto, siempre y cuando que las condiciones contenidas en la sección 2 de la ley reorganizando la Judicatura en Puerto Rico, o en el artículo 21 del Código de Enjuiciamiento Civil de 1911, Estatutos Revisados de 1913 sec. 5005, existan y para tramitar toda la labor judicial que en el curso ordinario pueda

recaer en el mismo. No habiendo ningún cargo *de jure* a ser cubierto, Pérez no era juez ni *de jure* ni *de facto*. . . ."

El presente caso es precisamente la situación contemplada por la Corte de Apelaciones cuando el artículo 21, y no el artículo 84 del Código de Enjuiciamiento Civil, entra en juego. Según indica dicha Corte de Apelaciones, un nombramiento de un juez sustituto como en este caso bajo el artículo 21 para sustituir temporalmente a un juez en propiedad sería un nombramiento para un cargo *de jure*. Por tanto creemos que es claro que el primer requisito para un funcionario *de facto*—que exista un cargo *de jure*—fué cumplido en este caso.

El segundo requisito para que una persona sea un funcionario *de facto* es que esté en posesión efectiva y controle el cargo no interviniendo para nada el funcionario *de jure*. Este requisito se cumple aun cuando un funcionario *de jure* tenga el título al cargo. Es decir, significa posesión efectiva y física del cargo por un individuo listo para actuar, según esto se distingue de la posesión legal o técnica que se considera tiene el funcionario *de jure*. *Gilormini* v. *Sucn. Padilla*, 63 D.P.R. 604; *Pueblo* v. *Díaz Cintrón*, 36 D.P.R. 571, 577–78; *Dienstag* v. *Fagan*, 65 A. 1011 (N.J., 1907); 140 Am. State Reports 164, 189–91; Mechem *on Public Officers*, sec. 322, pág. 216; Constantineau, supra, sec. 75, págs. 113–14.

Del récord no surge duda alguna de que González estaba en posesión física del cargo en las fechas en que actuó en este caso. Desde luego su posesión sería la de un intruso si el juez en propiedad estaba de hecho en posesión del cargo cuando González lo ocupó. Véase *González* v. *Corte*, supra, pág. 179. Pero el récord demuestra lo contrario. El Juez Marrero tenía licencia durante el período del mes de noviembre mientras González actuaba en el caso de filiación. Y de igual forma estuvo ausente el 23 de enero de 1947 cuando González dictó sentencia. Por consiguiente el Juez Marrero no estaba en posesión efectiva de su cargo y listo a actuar durante estos períodos. Y González estaba en posesión y por

tanto cumplió con el segundo requisito para ser un funcionario *de facto*.

El tercer requisito es que el supuesto funcionario *de facto* debe desempeñar sus funciones so color de autoridad. "So color de autoridad quiere decir autoridad derivada de una elección o nombramiento, por irregular e informal que éste sea, de suerte que el incumbente no sea un mero voluntario." *State* v. *Oates*, 57 N.W. 296, 297 (Wisc., 1893); *United States* v. *Royer*, 268 U.S. 394, 397; *Waite* v. *Santa Cruz*, 184 U.S. 302, 322–24; *McDowell* v. *United States*, 159 U. S. 596, 601; *Pueblo* v. *Pietrantoni*, 30 D.P.R. 769, 772; *Schoonover* v. *City of Viroqua*, 14 N.W.2d 9 (Wisc., 1944); *McKenna* v. *Nichols*, 175 S.W.2d 121 (Ky., 1943); *United States* v. *Lindsley*, 148 F.2d 22 (C.C.A. 7, 1945); *Ridout* v. *State*, 30 S.W.2d 255 (Tenn., 1930); *Rockingham County* v. *Luten Bridge Co.*, 35 F.2d 301, 306–7 (C.C.A. 4, 1929); *Sawyer* v. *State*, 113 S. 736, 744–5 (Fla., 1927); *In re Krickbaum's Contested Election*, 70 A. 852 (Pa., 1908); 37 Am. State Reports 832; Jarrett, supra, pág. 191 *et seq.*; Mechem, supra, sec. 319, pág. 214; Throop *on Public Officers*, sec. 623, pág. 587. Y véase *González* v. *Corte*, supra; *Heyward* v. *Long*, 183 S.E. 145, 151 (S.C., 1935).

██ La Sucesión admite que González recibió nombramientos como juez sustituto, debidamente firmados por el Gobernador. Sin embargo, alega que los defectos en estos nombramientos los hicieron insuficientes como base para las actuaciones de González como juez *de facto*. Pero el hecho de que un nombramiento pueda ser defectuoso en ciertos aspectos no impide que se actúe bajo el mismo como funcionario *de facto*. Aquí el Gobernador tenía poder para nombrar un juez sustituto para el Juez Marrero a tenor con el artículo 21 del Código de Enjuiciamiento Civil. Por consiguiente el Gobernador no estaba actuando sin ninguna autoridad de ley. Como hemos visto, la Sucesión sostiene (1) que bajo los hechos aquí envueltos, no había necesidad de nombrarle un sustituto al Juez Marrero, ya que éste estaba "en el pleno

desempeño de sus deberes . . ." durante los períodos en cuestión; (2) que bajo el artículo 21 el Gobernador no podía ir fuera de la judicatura en propiedad para nombrar un juez sustituto; (3) que González no fué válidamente nombrado porque el Secretario del Tribunal no envió al Gobernador la certificación exigida por el artículo 21; y (4) que el artículo 49 del Acta Orgánica prohibe los nombramientos temporales de jueces sustitutos hechos por el Gobernador únicamente. Como ya se ha indicado, diferimos de todas estas contenciones. Pero aun cuando conviniéramos con alguna o algunas de las tres últimas contenciones, bajo las anteriores autoridades las mismas no constituirían tales defectos como para anular las actuaciones de González como funcionario *de facto*. Los nombramientos en su consecuencia fueron efectivos por lo menos con el fin de darle a González color de autoridad para actuar como funcionario *de facto*.

Nos parece que debemos indicar también que una persona no se convierte en funcionario *de facto* actuando en un cargo como un mero usurpador o intruso en una sola ocasión sin color de autoridad. Debe, según dicen los casos, tener la reputación de que ocupa el cargo desde el cual actúa. *United States* v. *Royer*, supra; *Waite* v. *Santa Cruz*, supra; *Hussey* v. *Smith*, 99 U.S. 20, 24; *City of Tulsa* v. *Johnson*, 163 P.2d 993, 995 (Okla., 1945); *Annotation*, 161 A.L.R. 967; *Annotation*, 158 A.L.R. 529, 531-32; Ann. Cas. 1913 C. 1042, 1046-47; 25 L. ed. 314; 140 Am. State Reports 164, 168; Jarrett, supra, pág. 194. *Cf. City of Lawrence* v. *MacDonald*, 62 N.E.2d 850 (Mass., 1945), criticado adversamente en 59 Harv.L.Rev. 139. Pero como hemos visto, González actuó durante ciertos días en todos los casos ante la Sala de Relaciones de Familia del Tribunal de San Juan con nombramientos expedidos debidamente por el Gobernador de conformidad con una práctica administrativa observada durante muchos años. Tenía González, bajo estas circunstancias, la reputación de ser un juez. Por tanto, no podemos resolver que éste era un intruso que se apoderó de la corte para un solo acto.

■ Finalmente alega la Sucesión que González no podía actuar como juez *de facto* aun cuando fuera válidamente nombrado, porque no prestó un juramento especial como juez sustituto. Hemos dejado sin resolver la cuestión de si podía ser un funcionario *de jure* sin prestar el juramento del cargo. Hicimos esto porque los casos son virtualmente unánimes en que el no prestar el juramento del cargo no impide a un funcionario que goza de los otros requisitos necesarios, que actúe como un funcionario *de facto*. *Wright and Wade* v. *United States*, 158 U. S. 232, 238; *De Jan* v. *De Jan*, 18 F.2d 690 (C.C.A. 5, 1927); *Davenport* v. *Davenport*, 41 S. 240 (La., 1906); *Tower* v. *Whip*, 44 S.E. 179, 182 (W.Va., 1903); *In re Krickbaum's Contested Election*, supra; 140 Am. State Reports 164, 176–77; L.R.A. 1918B 1124; Constantineau, supra, sec. 129, pág. 101; Throop, supra, sec. 630, pág. 596; McCrary *on Elections*, 4ta. ed., sec. 251, pág. 189.

La corte de distrito cita varios de nuestros casos en apoyo de su conclusión de que González no actuó como juez *de facto* en el caso de filiación. Los caso de *Pueblo* v. *López*, 67 D.P.R. 780, y *Alcázar* v. *Corte*, 67 D.P.R. 727, nada tienen que ver con este problema. El de *Gilormini* v. *Sucn. Padilla*, supra, es claramente distinguible. En el mismo el juez de distrito de Guayama oyó un caso. Antes de dictar sentencia fué nombrado juez de distrito de San Juan. Asumió los deberes de su nuevo cargo y su sucesor como juez de distrito de Guayama fué nombrado y tomó posesión. Sin embargo, luego el juez ante quien se vió el caso originalmente dictó sentencia. Revocamos la sentencia a pesar del argumento de que fué resuelto por un juez *de facto*. Dijimos, como ya se ha indicado, que (pág. 605) "No puede existir un funcionario *de facto* cuando el cargo está siendo ocupado y desempeñado por un funcionario *de jure*." El caso de *Banuchi* v. *Corte*, 64 D.P.R. 112, fué resuelto a base de sus hechos peculiarísimos. Resolvimos en el mismo que un juez de paz no tenía jurisdicción y que sus decisiones eran por consiguiente nulas. En dicho caso no se discute la doctrina de funcionario *de facto*.

Nada encontramos en *The Bonnie Fruit Co.* v. *Dávila et al.,* 7 D.P.R. 442, 447, *Pueblo* v. *Díaz et al.,* 18 D.P.R. 912, o *Fabián* v. *Rossy et al.,* 22 D.P.R. 790, 796, que sostenga la conclusión de la corte de distrito. En consecuencia resolvemos, contrario a la cuarta conclusión de derecho de la corte inferior, que González actuó como un juez *de facto* en el caso de filiación.

■ Sólo resta considerar la sexta y última conclusión de derecho de la corte de distrito en la que resolvió que la Sucesión podía, según intentaba hacerlo aquí, atacar colateralmente la sentencia de filiación porque la misma fué dictada sin jurisdicción. La jurisprudencia citada por la corte inferior—artículo 429, Código de Enjuiciamiento Civil, ed. 1933; *Roman* v. *Corte Mpal.,* 59 D.P.R. 482; *Pueblo* v. *López,* supra —permiten que se ataque una sentencia en esta forma cuando se dicta sin jurisdicción. Pero lo que hemos dicho antes en relación con la validez de las actuaciones de González como juez *de facto* es suficiente para contestar la contención de que carecía de jurisdicción para ver el caso de filiación y dictar sentencia en el mismo.

Quizás la Sucesión podría haber cuestionado la validez del nombramiento de González como juez sustituto durante el curso del procedimiento de filiación. Annotation, 144 A.L.R. 1207, 1214. *Cf. National Bank of Washington* v. *McCrillis,* 130 P.2d 901 (Wash., 1942). Pero no lo hizo, si bien sabía o debió saber todos los alegados defectos en el *status* de González en ese momento. Permaneció silenciosa mientras se litigaba el caso ante el Tribunal de San Juan, ante este Tribunal y ante la Corte de Apelaciones para el Primer Circuito. De haber ganado en los méritos, hubiera sido la primera en defender la autoridad de González para decidir dicho caso. Habiendo perdido, ahora desea hacer caso omiso de todo lo que ha ocurrido y empezar de nuevo. Pero como no levantó esta cuestión en el caso de filiación, ahora no puede atacar colateralmente dicha sentencia, siempre y cuando González cumpliera con los requisitos exigidos a

un juez *de facto*. *In re Manning*, 139 U.S. 504; *Restatement, Judgments*, sec. 7, págs. 41, 45–46; 1 Freeman *on Judgments*, 5ta. ed., sec. 327, pág. 654. Cf. 59 Yale L. Rev. 345. En verdad, uno de los propósitos de la doctrina de *de facto* es precisamente evitar tal posibilidad.

■ La Sucesión arguye·que el auto de certiorari fué indebidamente expedido. Su primer punto es que la petición no fué jurada por Antonetti, según lo exige el artículo 672 del Código de Enjuiciamiento Civil y el artículo 470 del Código de Enjuiciamiento Criminal, ed. 1935. Pero hemos resuelto que la radicación del *return* de la corte inferior subsana este defecto. *Ortiz* v. *Corte de Paz*, 53 D.P.R. 38, 45.

■ La Sucesión también sostiene que el peticionario tiene un remedio adecuado en. derecho y que la resolución no es revisable por certiorari. Estas contensiones son insostenibles en vista de lo resuelto en *Pérez* v. *Tribunal de Distrito*, 69 D.P.R. 4. Tampoco podemos convenir con el argumento de la Sucesión de que al contestar la demanda y dar otros pasos ante la corte de distrito Antonetti renunció su derecho a radicar una petición de certiorari ante este Tribunal.

■ Como primeramente dijimos en esta opinión, no existe aquí una genuina controversia en cuanto a los hechos. Por tanto la corte de distrito debió haber declarado con lugar la moción del demandado Antonetti para que se dictara sentencia sumaria a su favor. Y en certiorari estamos autorizados a dictar la sentencia final que debió dictar la corte de distrito. *Pérez* v. *Tribunal de Distrito*, supra, pág. 17; *Hettinger & Co.* v. *Tribunal de Distrito*, supra.

*Por los motivos antes expuestos, la resolución de la corte de distrito denegando la moción del demandado solicitando sentencia sumaria será dejada sin efecto, y se dictará sentencia sumaria a favor del demandado.*

Los Jueces Asociados Sres. Marrero y Negrón Fernández se inhibieron.