JOSÉ LÓPEZ ABRIL, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. ABRAHAM DÍAZ GONZÁLEZ, JUEZ, demandado; ESTADO LIBRE ASOCIADO DE PUERTO RICO, interventor.

Número 2188.

*Sometido:* 10 de noviembre de 1955. *Resuelto:* 19 de marzo de 1956.

---

*Rodríguez Ema & Rodríguez Ramón,* abogados del peticionario; *Hon. Secretario de Justicia Interino J. B. Fernández Badillo* y *José Antonio Arabía, Procurador Auxiliar,* abogados del interventor.

EL JUEZ PRESIDENTE SEÑOR SNYDER, emitió la opinión del Tribunal.

Se trata en este caso de un pleito contra el Estado Libre Asociado instado por el anterior Secretario de la Comisión Hípica en reclamación de sueldos dejados de percibir. (1)    La teoría del demandante es que fué separado ilegalmente de su cargo el 3 de mayo de 1949.    El demandante fué separado en virtud de un acuerdo entre el Presidente y el Comisionado Asociado Suplente de la Comisión.    La contención del demandante es que la ley entonces en vigor no le permitía al Comisionado Suplente actuar como Comisionado en la fecha en que él fué separado de su cargo.

José López Abril demandó al Estado Libre Asociado ante el Tribunal de Distrito por supuestos sueldos dejados de percibir ascendentes a la suma de $895, correspondientes al período desde el 3 de mayo de 1949 al 15 de agosto del mismo año.    Las partes radicaron una estipulación de hechos y el Tribunal de Distrito dictó sentencia a favor del demandante.    Esta sentencia fué revocada en apelación por el Tribunal Superior.    Expedimos el auto de *certiorari* a solicitud del demandante para revisar la sentencia del Tribunal Superior.

█ █ El art. 3 de la Ley núm. 11, Leyes de Puerto Rico, 1931-1932 (pág. 195), conocida como la Ley Hípica de Puerto Rico, según fué enmendada por la Ley núm. 184, Leyes de Puerto Rico, 1941 ((1) pág. 1387), disponía:  En primer

---

(1) El Estado Libre Asociado consintió a este pleito mediante la Resolución Conjunta núm. 17 del 10 de mayo de 1954.

lugar, el Gobernador nombraría al Presidente y a dos Comisionados Asociados de la Comisión Hípica por el término de tres años y hasta que sus sucesores hubieran sido nombrados y tomado posesión de sus cargos.    En segundo lugar, estos términos expirarían en la fecha en que comenzase la primera sesión ordinaria de la Asamblea Legislativa después de unas elecciones generales.    En tercer lugar, el Gobernador nombraría un Comisionado Asociado Suplente por el término de tres años quien, en caso de ausencia, por cualquier causa, de uno de los Comisionados Asociados, desempeñaría interinamente el cargo. [2]

En octubre de 1948, el Gobernador le aceptó la renuncia a Guillermo Rubert como Comisionado Asociado; el 3 de mayo de 1949 todavía estaba vacante este cargo.    El 19 de mayo el Doctor José A. Noya fué nombrado Comisionado

---

[2] El art. 3 provee en parte como sigue: "Por la presente se establece una Comisión Hípica Insular compuesta de un Comisionado Hípico Insular que será el Presidente de la Comisión y dos Comisionados Asociados, todos los cuales serán nombrados por el Gobernador con el consejo y consentimiento del Senado de Puerto Rico.    El Comisionado Hípico Insular será nombrado por un término de tres (3) años y hasta que su sucesor haya sido nombrado y hubiere tomado posesión de su cargo; y uno de dichos comisionados asociados, el primero en ser nombrado, desempeñará el cargo por un término de dos (2) años, y el otro por el término de un (1) año, y en lo sucesivo cada uno de dichos comisionados asociados que fuere nombrado para un nuevo término desempeñará el cargo por un término de tres (3) años y hasta que su sucesor haya sido nombrado y hubiese tomado posesión de su cargo; *Disponiéndose,* que en todo caso, el término de nombramiento de cualesquiera de dichos comisionados expirará en la fecha en que comience la primera sesión ordinaria de la Asamblea Legislativa de Puerto Rico, después de unas elecciones generales.    Todos dichos cargos se declaran incompatibles con cualquier otro cargo público retribuído por el Gobierno Insular o Municipal.

"El Gobernador de Puerto Rico además nombrará con el consejo y consentimiento del Senado de Puerto Rico, por el término de tres (3) años, un Comisionado Asociado Suplente, quien, en caso de ausencia, por cualquier causa, de uno de los Comisionados Asociados, desempeñará interinamente el cargo y devengará la dieta o compensación del Comisionado Asociado ausente..."

La Ley núm. 11 de 1932, según fué enmendada, fué suplantada como Ley Hípica de Puerto Rico por la Ley núm. 421, Leyes de Puerto Rico, 1950; véase 15 L.P.R.A., sec. 181.    En su consecuencia, la cuestión que se presenta en este caso no puede ocurrir otra vez.

Asociado. En noviembre de 1948 se celebraron las elecciones generales en Puerto Rico. La primera sesión ordinaria de la Asamblea Legislativa después de dichas elecciones comenzó en febrero de 1949. Luis Bigles Becerra fué nombrado Comisionado Asociado Suplente en mayo de 1948; participó en las deliberaciones y acuerdos de la Comisión en varias ocasiones en diciembre 1948 y de enero a mayo de 1949. Desde el primero de enero de 1949 al 5 de mayo del mismo año, no se hizo nombramiento alguno de Comisionado Asociado.

Alega el demandante que en mayo de 1949 Bigles no podía actuar válidamente en lugar de Noya. Sostiene que el cargo de Noya como Comisionado Asociado quedó vacante de conformidad con el art. 3 el día en que comenzó la sesión ordinaria de 1949 de la Asamblea Legislativa. Arguye que el art. 3 autorizaba al Comisionado Asociado Suplente para actuar únicamente en el caso en que un comisionado que todavía ostentaba el título estuviera ausente y que aquí Bigles no podía actuar porque el cargo de Noya estaba vacante.

El art. 3 disponía que los comisionados serían nombrados por un término de tres años y hasta que sus sucesores hubieran sido nombrados y tomado posesión de sus cargos. Bajo un estatuto que específicamente contenía una cláusula sobre "holding over" como la aquí envuelta, un funcionario cuyo término ha expirado pero que continúa en el cargo porque su sucesor todavía no ha sido nombrado, es un funcionario *de jure*. *González* v. *Corte*, 62 D.P.R. 160, 164–5; *Acosta* v. *Corte*, 63 D.P.R. 651. El demandante alega, sin embargo, que cuando como aquí los términos de los comisionados expiraron en virtud de la disposición sobre las elecciones y la sesión ordinaria de la Asamblea Legislativa contenida en el art. 3, la cláusula de "holding over" del art. 3 nada tuvo que ver en este caso.

No estamos de acuerdo. Es cierto que la Asamblea Legislativa no repitió en el *Disponiéndose* del art. 3 la cláusula

sobre "holding over" contenida en la parte anterior de dicho artículo que establecía el término de tres años para los comisionados. Sin embargo, leyendo el art. 3 en conjunto, creemos que la Asamblea Legislativa tuvo por miras que la cláusula sobre "holding over" cubriera no solamente el caso de un comisionado cuyo término expirara por el transcurso de los tres años, sino también la situación en que los términos de todos los comisionados se consideraran expirados en virtud de las elecciones generales y de la sesión ordinaria de la Asamblea Legislativa. Para convenir con el demandante tendríamos que resolver que la Asamblea Legislativa tuvo por miras eliminar la Comisión antes de que el Gobernador tuviera la oportunidad de nombrar y el Senado de confirmar a los nuevos miembros. El lenguaje del art. 3 no requiere un resultado tan funesto que dejara a la comunidad durante cierto período sin una Comisión legal. *Cf. Ríos* v. *Tribunal de Contribuciones*, 72 D.P.R. 124, 127. En el art. 3 la Asamblea Legislativa fijó términos de tres años para los comisionados, a menos que fueran terminados antes por las elecciones generales y el comienzo de la sesión ordinaria. Pero ya fuera el caso de que un comisionado desempeñara su cargo durante el término de tres años o durante un período menor debido a las elecciones, somos de opinión que la Asamblea Legislativa quiso decir que todos los comisionados se quedarían "holding over" hasta que sus sucesores fueran nombrados y hubieran tomado posesión de sus cargos.

De conformidad con la anterior interpretación del art. 3, Noya todavía era un miembro *de jure* de la Comisión en mayo de 1949, ya que su sucesor no había sido aún nombrado para esa fecha. En su consecuencia, como el cargo no estaba vacante, el Comisionado Asociado Suplente Bigles estaba actuando válidamente a tenor con el art. 3 durante la ausencia de Noya en mayo de 1949. Por consiguiente, fué válida la actuación del Presidente de la Comisión y de Bigles

al separar al demandante de su cargo de Secretario de la Comisión.(³)

*El auto de certiorari será anulado.*

El Juez Asociado Sr. Belaval no intervino.

(³) El resultado a que hemos llegado hace innecesario que determinemos si Bigles actuaba como funcionario *de facto* al unirse al Presidente de la Comisión en la separación del demandante del cargo de Secretario. Véanse *Fernández* v. *Corte,* 71 D.P.R. 161, 181–7, confirmado en 184 F.2d 1015 (C.A. 1, 1950); *González* v. *Corte,* supra; 69 Harv.L.Rev. 760. *Cf. Vergne* v. *Tribunal Superior,* 77 D.P.R. 22.