ARTURO BETANCOURT MORALES, apelado, *v.* HON. GOBERNADOR DE PUERTO RICO, ETC., apelante.

*Número:* CE-86-826     *Resuelto:* 30 de junio de 1987

*Rafael Ortiz Carrión, Procurador General, Norma Cotti Cruz, Sub Procuradora General, Lorenzo Vilanova Alfonso, Procurador General Auxiliar,* abogados del apelante; *Carlos A. López-Lay,* de *López-Lay & Vizcarra,* abogado del apelado y *Pablo R. Cancio,* abogado del Senado de Puerto Rico.

SENTENCIA

San Juan, Puerto Rico, a 30 de junio de 1987

Vistos el escrito de apelación, los alegatos de las partes y la comparecencia especial del Senado de Puerto Rico, se dicta sentencia que confirma la del Tribunal Superior, Sala de San Juan, de 15 de diciembre de 1986.

Así lo pronunció y manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Negrón García y el Juez Asociado Señor Alonso Alonso emitieron opiniones concurrentes respectivamente. El Juez Asociado Señor Rebollo López no intervino. El Juez Asociado Señor Ortiz se inhibió.

(*Fdo.*) Bruno Cortés Trigo
*Secretario General*

—O—

Opinión concurrente del Juez Asociado Señor Negrón García.

Al concurrir con la Sentencia del Tribunal, hoy, al igual que lo expusiéramos el 23 de diciembre de 1986, reafirmamos el criterio de que "bajo nuestra Constitución el Poder Ejecutivo no puede, sin el consenso del Senado, sustituir a un funcionario cobijado por una cláusula de continuidad. Actuó correctamente el foro de instancia. Al licenciado Betancourt le protege la misma en virtud del Art. 4 de la Ley Núm. 23 de 24 de julio de 1952 (3 L.P.R.A. sec. 93). El Gobernador no podía ni puede sustituirlo durante el receso del Senado. Para que su sucesor *tome posesión del cargo*, previamente necesita ser confirmado por el Senado de Puerto Rico". (Énfasis en el original.) *Betancourt Morales* v. *Gobernador de P.R.*, 118 D.P.R. 149 (1986).

—O—

Opinión concurrente del Juez Asociado Señor Alonso Alonso.

Se nos plantea si el Primer Ejecutivo del Estado Libre Asociado de Puerto Rico tiene facultad para extender un nombramiento para el cargo de Fiscal Auxiliar mientras se halla en receso el Senado de Puerto Rico, cuando ha

transcurrido el término de ocho años para el cual el incumbente fue nombrado y confirmado, vigente una cláusula de continuidad (*holding over*) como la dispuesta en el Art. 4 de la Ley Núm. 23 de 24 de julio de 1952 (3 L.P.R.A. sec. 93, según enmendada), y cuando el nombramiento en receso a dicho cargo no es enviado para consideración del Senado.

Concurro que no tiene tal facultad por las siguientes razones:

En primer lugar, la referida ley requiere que el sustituto sea nombrado con el consejo y consentimiento del Senado.

En segundo lugar, la Constitución del Estado Libre Asociado de Puerto Rico dispone que el nombramiento de dicho funcionario al cargo de Fiscal Auxiliar será compartido por el Gobernador y la Asamblea Legislativa, dadas las particulares circunstancias de este caso.

En tercer lugar, el sustituto del fiscal incumbente nunca ha sido enviado a la Asamblea Legislativa para su consideración, aun cuando ésta ha estado en posición de así hacerlo.

En cuarto lugar, la cláusula de nombramientos en receso encarnada en nuestra Constitución es de naturaleza suplementaria para ser ejercida sólo cuando existe una vacante real y cuando no existe una cláusula de continuidad como la que tenemos ante nos.

## I

*Los hechos*

Al Lcdo. Arturo Betancourt Morales le fue extendido por el entonces Gobernador de Puerto Rico, Hon. Carlos Romero Barceló, un nombramiento al cargo de Fiscal Auxiliar del Tribunal Superior[1] a ser efectivo el 11 de julio de 1977

---

[1] La ley que crea el cargo de Fiscal Auxiliar, entre otros, es la Ley Núm. 23 de 24 de julio de 1952 (3 L.P.R.A. secs. 92 y 93).

y por un término fijo de ocho (8) años que expiraría el 11 de julio de 1985.(²) Llegada esta fecha, el licenciado Betancourt Morales continuó en el ejercicio de las funciones inherentes al cargo de Fiscal Auxiliar. No fue hasta el 5 de diciembre de 1986 que el actual Gobernador de Puerto Rico, Hon. Rafael Hernández Colón, por conducto de su asesor, Lcdo. Hiram A. Sánchez, le comunicó al licenciado Betancourt Morales que ya que su nombramiento había expirado, se proponía extenderle un nombramiento en receso al Lcdo. José E. Motta Malavé para sustituirle en el cargo, efectivo el 16 de diciembre de 1986.(³)

El término fijo del nombramiento del licenciado Betancourt Morales como Fiscal Auxiliar expiró el 11 de julio de 1985, mientras el Senado se encontraba ya en receso. El Gobernador no extendió entonces un nombramiento en receso para sustituir al licenciado Betancourt Morales. Tampoco sometió a la Legislatura nombramiento alguno mientras estaba reunida en la Sesión Ordinaria de 1986. No es sino hasta el receso legislativo de 1986 que el Gobernador nombra al Lcdo. José E. Motta Malavé para sustituir al licenciado Betancourt Morales.

De singular importancia para nuestro análisis y decisión es que el nombramiento del sustituto del licenciado

---

(²) Mediante la Resolución Conjunta Núm. 10 de 20 de mayo de 1985, la Sesión Ordinaria de 1985 fue extendida hasta, y finalizó el 5 de junio de 1985. Al vencer el término fijo del licenciado Betancourt Morales, el Senado se encontraba ya en receso.

(³) El texto de la carta lee como sigue:

"En virtud de la autoridad que le ha sido concedida por Ley, le informo que el Gobernador está designando en receso, efectivo el 16 de diciembre de 1986, al Lcdo. José Emilio Motta Malavé para sustituirlo a usted en el cargo de Fiscal Auxiliar del Tribunal Superior que usted desempeña.

"Le deseo éxito en sus gestiones futuras." Carta de 5 de diciembre de 1986, Ap. II, pág. 4.

Betancourt Morales tampoco fue sometido a la Sesión Ordinaria de 1987.(⁴)

No conforme con la decisión del Gobernador, el licenciado Betancourt Morales presentó en el Tribunal Superior, Sala de San Juan, demanda de *injunction* preliminar y permanente contra el Hon. Gobernador de Puerto Rico y demás codemandados. Solicitaba por medio de ésta que se detuviera su sustitución por el licenciado Motta, por razón de que el nombramiento de éste no gozaba todavía de la confirmación del Senado de Puerto Rico. Alegó que el cargo de Fiscal Auxiliar tiene una cláusula de continuidad en virtud de la cual él había desempeñado sus funciones después de haber expirado su nombramiento, y que sólo podía ser sustituido por un funcionario cuyo nombramiento hubiere obtenido el consentimiento del Senado de Puerto Rico.

Señalada la vista para atender los reclamos del licenciado Betancourt, y al mediar una moción de desestimación presentada por la representación legal del Gobernador y demás partes demandadas, el tribunal de

---

(⁴) Así lo informó el Procurador General Rafael Ortiz Carrión en su moción informativa de 11 de junio de 1987. Ello hace innecesario que nos expresemos sobre el alcance de lo dispuesto en la última oración de la facultad de nombramientos del Gobernador contenida en el Art. IV, Sec. 4 de nuestra Constitución, L.P.R.A., Tomo 1, ed. 1982, pág. 349, y lo expresado en *Hernández Agosto* v. *López Nieves*, 114 D.P.R. 601, 620–621 (1983), sobre ella. Véase, también, *E.L.A.* v. *Aguayo*, 80 D.P.R. 552, 596 (1958). Recientemente en *Hernández Agosto* v. *Betancourt*, 118 D.P.R. 79, 86 (1986), sostuvimos:

" ... Los tribunales tienen el deber de evitar decidir a destiempo cuestiones constitucionales. Cuando surge una controversia entre las ramas de gobierno referente a sus poderes, la intervención judicial debe aplazarse hasta que todas las posibilidades de lograr un acuerdo se hayan agotado. La abstención judicial es necesaria para mantener el delicado balance de poderes. Como en este caso la controversia sobre el alcance del privilegio ejecutivo presenta una compleja cuestión constitucional en el contexto de una disputa entre la Asamblea Legislativa y la Rama Ejecutiva, el Tribunal no debe decidir estas cuestiones hasta que existan las circunstancias adecuadas. (Citas omitidas.) Así evitamos adelantar pronunciamientos en abstracto de índole consultiva."

instancia(5) dictó sentencia a favor del licenciado Betancourt Morales el 15 de diciembre de 1986. En ésta dictaminó:

> Si aplicamos la referida doctrina jurisprudencial, a los hechos del presente caso, venimos obligados a llegar a la conclusión de que habiendo sido nombrado el demandante por el Gobernador con el consejo y consentimiento del Senado, por un período de 8 años, *véase 32 [L.P.R.A. sec. 93,] y hasta que su sucesor fuese designado,* el término del demandante no ha expirado aún y no expirará hasta que su sucesor haya sido nombrado por el Gobernador, con el consejo y consentimiento del Senado y haya tomado posesión de su cargo. (Énfasis en el original.) Apéndice I, pág. 2.

El 18 de diciembre de 1986 comparecieron ante nos el Gobernador de Puerto Rico y los restantes codemandados a través de la representación legal provista por el Procurador General.

Concedimos al Senado de Puerto Rico la oportunidad de comparecer y expresar lo que estimara pertinente en torno a la controversia planteada. El 31 de marzo de 1987 así lo hizo. El Senado sostiene que el Gobernador no tiene facultad constitucional para extender el referido nombramiento por no existir una vacante en el cargo por virtud de la cláusula de continuidad, y porque se afectaría su facultad constitucional de brindar su consejo y consentimiento en el nombramiento de aquellos funcionarios públicos que lo requieren. El Procurador General arguye que el poder constitucional del Gobernador de hacer nombramientos en receso lo faculta para hacer el nombramiento en controversia, aun cuando exista una cláusula de continuidad y el Senado esté en receso.

---

(5) Hon. Arnaldo López Rodríguez.

## II

*Sobre nuestra intervención judicial*

En *Santa Aponte* v. *Srio. del Senado,* 105 D.P.R. 750, 759 (1977), al interpretar el Art. V, Sec. 1 de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, ed. 1982, pág. 355, sobre el Poder Judicial expresamos que: " . . . La función de ser intérprete final de la Constitución le corresponde exclusivamente a un solo poder, al Poder Judicial. La Constitución les confiere determinadas facultades al Poder Legislativo y al Ejecutivo, pero la definición de sus contornos y la determinación de la validez de su ejercicio son asuntos cuidadosamente reservados a los tribunales."

Recientemente en *Silva* v. *Hernández Agosto,* 118 D.P.R. 45, 57 (1986), reiteramos dicha facultad constitucional y expresamos que: "La relación entre los poderes del Gobierno debe ser dinámica y armoniosa. Su éxito depende de que cada una acepte y respete la autoridad de las otras y entienda la interrelación de sus funciones. Su perdurabilidad requiere que cuando haya conflicto sobre el alcance de los poderes constitucionales de cualquiera de ellas, los tribunales intervengan con prudencia y deferencia para aclarar los contornos de la Constitución y facilitar la resolución de las diferencias."

La resolución de la controversia planteada ante nos requiere un análisis conciliador entre lo dispuesto por la ley que invoca el licenciado Betancourt Morales y el propósito que inspira la función compartida por las Ramas Ejecutiva y Legislativa de nombramientos de funcionarios públicos que por ley o por la Constitución requieran consejo y consentimiento del Senado para un cargo.

Nuestro análisis se circunscribe exclusivamente a los hechos particulares de este caso y a la cláusula de continuidad que tenemos ante nos.

El Art. 1 de la Ley Núm. 23 de 24 de julio de 1952 (3 L.P.R.A. sec. 90) crea los cargos de fiscales, y el Art. 2 (3 L.P.R.A. sec. 91) establece sus poderes y funciones.

El Art. 3 de dicha ley, 3 L.P.R.A. sec. 92, dispone que:

El Gobernador nombrará *con el consejo y consentimiento del Senado*, los Fiscales .... (Énfasis suplido.)

Y el Art. 4 de la misma ley, 3 L.P.R.A. sec. 93, dispone lo siguiente:

Los Fiscales ... serán nombrados por el término de ocho (8) años y hasta que sus sucesores *tomen posesión de sus cargos*. (Énfasis suplido.)

Estos artículos formaban parte de una ley que por su carácter urgente y necesario, comenzó a regir tan pronto entró en vigor la Constitución del Estado Libre Asociado de Puerto Rico. Véase Art. 8 de la Ley Núm. 23 de 24 de julio de 1952 (3 L.P.R.A. sec. 93d). La Constitución se aprobó posteriormente el 6 de febrero de 1952 aunque entró en vigor el 25 de julio de 1952, por lo que ambos son textos coetáneos al entrar en vigor simultáneamente y por consiguiente deben interpretarse armónicamente.

La propia ley creadora del cargo de Fiscal Auxiliar dispone que el nombramiento se hará con el consejo y consentimiento del Senado. La Constitución del E.L.A. en su Art. IV, Sec. 4, L.P.R.A., Tomo 1, ed. 1982, pág. 349, dispone que los nombramientos se harán en la *forma* que disponga la propia Constitución *o la ley*.

El nombramiento al cargo de Fiscal Auxiliar es compartido por el Ejecutivo y el Legislativo y el ejercicio de las funciones de cada uno de éstos no puede darse, como cuestión de la doctrina de separación de poderes y de frenos y contrapesos, a merced del ejercicio de la función constitucional del otro. *Hernández Agosto* v. *López Nieves*, 114 D.P.R. 601 (1983). Siguiendo esta misma línea de

pensamiento, expresamos en *Hernández Agosto* v. *López Nieves,* supra, pág. 620:

> La doctrina de separación de poderes y el sistema democrático mismo de gobierno presuponen, en lo que atañe a las facultades compartidas como es la de nombramiento, la búsqueda del consenso, el logro del equilibrio necesario para realizar las tareas del gobierno. En lo que atañe a nombramientos, la Rama Ejecutiva no puede despojar a la Rama Legislativa del poder de confirmación que le confieren la Constitución y las leyes. Tampoco puede el Senado o la Rama Legislativa usurpar el poder de nominación del señor Gobernador mediante afirmaciones indicativas de que confirmará únicamente a determinado candidato.

Si nuestra Constitución expresamente dispone que un funcionario nombrado mientras el Senado está en sesión no puede tomar posesión del cargo hasta que el Senado lo confirme, no contribuye al logro del balance constitucional interpretar que puede tomar posesión del mismo mediante un nombramiento en receso si no existe una *vacante real* en el cargo, tales como las producidas por muerte, renuncia, destitución o expiración del término ausente una cláusula de continuidad.[6]

---

[6] Los cargos cuyo término de duración son por un período fijo de años aspiran a lograr independencia de criterio y la ausencia de influencias indebidas en el funcionario que lo ejerce.

La duración indefinida del término de una incumbencia de continuidad también contraviene el equilibrio que intenta mantener la Constitución en lo que respecta al ejercicio del poder de nombramiento, compartido por la Rama Ejecutiva y la Legislativa. Se abona el terreno para que se produzca una situación que derrota el fino balance deseado en el proceso de extender nombramientos que requieran consejo y consentimiento del Senado.

El Gobernador tiene a su disposición la alternativa que se le reconoció en el debate de la Convención Constituyente de enviar discrecionalmente a las Cámaras en alguna sesión extraordinaria algún nombramiento para su confirmación. 3 Diario de Sesiones de la Convención Constituyente 1851–1856 (1954).

## III

La cláusula constitucional de nombramiento, Art. IV, Sec. 4, de la Cons. E.L.A., *supra*, dispone:

> Los deberes, funciones y atribuciones del Gobernador serán:
>
> . . . . . . . .
>
> Nombrar, en la forma que se disponga por esta Constitución o por ley, a todos los funcionarios para cuyo nombramiento esté facultado. El Gobernador podrá hacer nombramientos cuando la Asamblea Legislativa no esté en sesión. Todo nombramiento que requiera el consejo y consentimiento del Senado o de ambas cámaras quedará sin efecto al levantarse la siguiente sesión ordinaria.

### El historial constitucional federal

El poder de nombramiento, tanto de nuestra Constitución como de la de Estados Unidos de América, fue instituido como una de las funciones constitucionales a ser compartidas por la Rama Legislativa y la Ejecutiva. *Hernández Agosto* v. *López Nieves*, supra; L.H. Tribe, *American Constitutional Law*, Nueva York, Ed. Foundation Press, 1978, pág. 188; L. Kutner, *Advice and Dissent: Due Process of the Senate*, 23 De Paul L. Rev. 658, 661 (1974); C.H. Percy, *Advice and Consent: A Reevaluation*, So. Ill. U.L.J. 31–43 (Mayo, 1978).

En el ámbito federal la configuración final de un método de nombramiento compartido por el Poder Ejecutivo y el Legislativo fue uno de los aspectos más debatidos y ponderados en la Convención Constituyente federal. J.P. Harris, *The Advice and Consent of the Senate*, Connecticut, Greenwood Press, 1968, págs. 17–19; Nota, *Power of Appointment to Public Office Under the Federal Constitution*, 42 Harv. L. Rev. 426, 428 (1928). Por razón del ejercicio compartido de la función constitucional de nombramiento, los fundadores de Estados Unidos de América tuvieron que

idear un método de nombramiento para ser ejercido por el Poder Ejecutivo cuando el Senado estuviera en receso. De esta manera surgió la cláusula de nombramientos en receso. M. Farrand, *The Framing of the Constitution of the United States*, New Haven, Yale Univ. Press, 1913, Vol. 2, págs. 539-540. Si bien no hay historial del debate al adoptar esta cláusula, Alexander Hamilton indicó el propósito y alcance de la misma en *The Federalist*, No. 67, pág. 455 (J. Cooke ed. 1961):

> ... [I]t would have been improper to oblige [the Senate] to be continually in session for the appointment of officers. ... [V]acancies might happen *in their recess*, which it might be necessary for the public service to fill without delay. (Énfasis en el original.)

De esta forma, la cláusula de nombramientos en receso era, en las propias palabras de Hamilton, *op. cit.*, pág. 455, un *"auxiliary method of appointment in cases, to which the general method was inadequate"*. (Énfasis suplido.)

*Los debates de la Convención Constituyente del Estado Libre Asociado de Puerto Rico*

Los debates en la Convención Constituyente demuestran que, por el carácter suplementario de la cláusula de nombramientos en receso, ésta tiene limitaciones similares a las concebidas por los constituyentes de la Constitución federal. 4 Diario de Sesiones de la Convención Constituyente 2337-2338 (1961).

Es significativo destacar que el único cambio sustantivo que sufrió la disposición constitucional en controversia fue precisamente dispensar al Gobernador de enviar a las Sesiones Extraordinarias sus nombramientos en receso, dejando tal facultad como discrecional. 3 Diario de Sesiones de la Convención Constituyente 1851-1856 (1954). Ello fortalece la interpretación que hacemos del propósito de la

convención constituyente de que los nombramientos en receso son de tipo suplementario y que la norma general es de que se sometan al Senado cuando éste está en sesión.

*La experiencia en las jurisdicciones estatales*

En las jurisdicciones de los estados de la Unión norteamericana, la doctrina preponderante es la que atribuye naturaleza suplementaria a este tipo de cláusula. *Case of District Attorney of United States*, 7 F. Cas. 731 (D.C.E.D. Pa. 1868) (Núm. 3,924); *Peay v. Schenck*, 21 F. Cas. 672 (C.C.E.D. Ark. 1869) (Núm. 12,451); J.M. Dawley, *The Governors' Constitutional Powers of Appointment and Removal*, 22 Minn. L. Rev. 451, 461–463 (1938); Nota, *Public Officers: Effect of Hold Over Clause Upon Tenure*, 10 Temp. L.Q. 191 (1935). La razón de ser de esta norma es evitar que el Poder Ejecutivo afecte la función de confirmación del Senado y lograr que el Primer Ejecutivo consulte al Senado cuando éste está en condiciones de ofrecer consejo y consentimiento por estar en sesión.

La cláusula de nombramientos en receso fue creada para conferir autoridad al Primer Ejecutivo de llenar *vacantes reales* en cargos que por razones de necesidad del servicio no toleran mayor dilación. La cláusula es suplementaria y no el mecanismo principal de nombramientos que requieren confirmación del Senado. Comentario, *Constitutional Restrictions on the President's Power to Make Recess Appointments*, 79 Nw. U.L. Rev. 191 (1984).

## IV

*Nuestra doctrina jurisprudencial*

Ya en *González v. Corte*, 62 D.P.R. 160 (1943), reconocimos que una cláusula de continuidad está concebida para mantener en el ejercicio de las funciones inherentes a su cargo a un funcionario *cuyo término en el mismo expira*

*mientras la Legislatura se encuentra en receso* y, por ende, está inhabilitada para prestar su consentimiento a la extensión de un nombramiento que para sustituir al incumbente haga el Gobernador. En tales circunstancias, sostuvimos, que la mera expiración del término de nombramiento del incumbente no crea una vacante, condición necesaria, entre otras, para que el Gobernador pueda válidamente extender un nombramiento en receso. Reconocimos como los propósitos, legítimos entonces, de la cláusula de continuidad: (1) retener en todo momento en el cargo a una persona que ha sido nombrada con el consejo y consentimiento del Senado, incluyendo el período después que su término ha expirado, *hasta que el Senado pueda reunirse y concurrir con el Gobernador en volverlo a nombrar o elegir su sucesor,* y (2) evitar vacantes que entorpezcan la continuidad en la administración de los asuntos públicos.

*Acosta* v. *Corte,* 63 D.P.R. 651 (1944), nos dio una segunda oportunidad para expresarnos sobre el particular. Resolvimos que a la luz de lo resuelto en *González* v. *Corte,* supra, Acosta tenía derecho a permanecer en el cargo *hasta tanto el Senado confirmara a un sustituto.*

Con posterioridad a la Constitución hemos aplicado nuestra doctrina jurisprudencial en *Fernández* v. *Corte,* 71 D.P.R. 161 (1950); *López* v. *Tribunal Superior,* 79 D.P.R. 20, 23 (1956); *J.R.T.* v. *Milares Realty, Inc.,* 90 D.P.R. 844, 858 (1964).

El Procurador General nos invita a adoptar en nuestra jurisdicción lo resuelto por el Tribunal Federal de Distrito para el Distrito de Columbia en *Staebler* v. *Carter,* 464 F. Supp. 585 (D.C. 1979), y en *McCalpin* v. *Durant,* 766 F.2d 535 (D.C.1985). Tal invitación tiene varias limitaciones. Una consiste en que la legislación interpretada en *Staebler* v. *Carter,* supra, sugería en su lenguaje que la expiración del término del incumbente producía una vacante. Tal no es el caso del estatuto aquí en cuestión. También en *Staebler*

v. *Carter*, supra, pág. 588, el lenguaje del estatuto era puramente permisivo para propósitos de la incumbencia *holding over*. Dicho lenguaje disponía: "A member of the Commission *may serve* on the Commission after the expiration of his term until his successor has taken office as a member of the Commission." (Énfasis suplido.) En *Staebler* v. *Carter*, supra, se trataba de la Comisión Federal de Elecciones que estaba compuesta por los Secretarios de la Cámara de Representantes y del Senado de Estados Unidos y seis (6) miembros nombrados por el Presidente con el consejo y consentimiento del Senado en forma escalonada por un período de seis (6) años.

Los hechos en *Staebler* v. *Carter*, supra, son distintos a los que tenemos ante nos. Allí el Presidente designó al señor McGarry para un cargo vacante en la Comisión y sometió dicho nombramiento al Senado mientras estaba en sesión. El Senado recesó sin confirmarlo. El Presidente, en la próxima sesión ordinaria del Senado, envió nuevamente su nominación y el Senado recesó sin confirmarlo. Finalmente el Presidente lo nombró durante el siguiente receso. En *Staebler* v. *Carter*, supra, se le brindó al Senado, en dos ocasiones, la oportunidad de considerar la nominación y ejercer su facultad constitucional.

En *McCalpin* v. *Durant*, supra, se trataba del nombramiento hecho por el Presidente, de nueve (9) miembros de Directores de la Corporación de Servicios Legales. Los nombramientos se realizaron durante el receso legislativo. Dichos nombramientos *fueron enviados al Senado de Estados Unidos* pero no pudieron ser confirmados por éste. El Tribunal, basándose en *Staebler* v. *Carter*, supra, y en un extenso análisis del historial legislativo de la ley, determinó que el propósito claro del Congreso no había sido el de privar al Presidente de hacer dichos nombramientos durante el receso.

En el caso que nos ocupa, como ya hemos visto, el Gobernador no ha enviado al Senado el nombramiento del licenciado Motta ni el del licenciado Betancourt, ni en 1986 ni en 1987. El Senado no ha tenido oportunidad de pasar juicio sobre él habiendo estado habilitado para hacerlo.

Por todo lo expuesto, concurro con la sentencia de este Tribunal que confirma la de instancia.