BENILDE TORRES RIVERA y OTRA, demandantes y recurrentes, *v.* GONZÁLEZ PADÍN & COMPANY, INC., demandados y recurridos, y OTIS ELEVATOR COMPANY, tercera demandada y recurrida.

*Número:* RE-93-229       *Resuelto:* 18 de junio de 1993

*Arturo Aponte Parés,* abogado de la recurrente; *Miguel A. Raldiris Aguayo,* abogado de la tercera demandada y recurrida.

## RESOLUCIÓN

A la anterior solicitud de revisión se determinó un no ha lugar. La caída de la demandante recurrente Sra. Benilde Torres Rivera, *per se,* no implica que la recurrida, González Padín & Co., Inc., fuera negligente. Conforme la sentencia del foro de instancia, no se desfiló prueba creíble de la exis-

tencia de defecto alguno. El recurso de revisión no logra persuadir la corrección de esa sentencia.

Lo acordó el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Negrón García emitió un voto explicativo. El Juez Asociado Señor Rebollo López emitió un voto explicativo. El Juez Asociado Señor Alonso Alonso emitió un voto particular de conformidad, al cual se unió el Juez Asociado Señor Fuster Berlingeri. La Juez Asociada Señora Naveira de Rodón limitaría el dictamen del Tribunal a un no ha lugar.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

## – O –

Voto explicativo del Juez Asociado Señor Negrón García.

### I

El Art. 4(c) de la Ley Núm. 11 de 2 de junio de 1993 (4 L.P.R.A. sec. 121), nos manda a explicar las razones para denegar las solicitudes de revisión discrecional. Nadie cuestiona la prerrogativa de la Asamblea Legislativa, como alternativa, para reinstalar plenamente el derecho de apelación en todo caso civil. Tampoco que ello, por imperativo, implicaría seguir una serie de trámites, *incluso tener que resolverlos por sentencia u opinión fundamentada (explicada).*

Frente a esta realidad, el mandato aludido, ¿choca contra nuestra facultad constitucional de adoptar reglas de funcionamiento? Art. V, Sec. 4, Const. E.L.A., L.P.R.A., Tomo 1. ¿Incide de verdad en la independencia del Poder Judicial? ¿Es sólo directivo?

## II

No consideramos propio *anticipar a destiempo y en el vacío* criterios constitucionales. Por el momento, basta recordar que el exponer ahora las razones para nuestras denegatorias, es un *derecho* de origen estatutario que pertenece a las partes que tocan a nuestras puertas. Antes de la Ley Núm. 11, *supra,* no existía este derecho. Una vez así reconocido, *quaere* si forma parte del debido proceso de ley.

Y como señaló el Juez Presidente Señor Andréu García el 27 de abril de 1993 —en su comparecencia ante la Cámara de Representantes— no existe impedimento alguno para hacerlo. Informe de la Comisión de Gobierno de la Camara de Representantes, P. de la C. 382 de 5 de mayo de 1993, 12ma Asamblea Legislativa, 1ra Sesión Ordinaria, pág. 41.

— o —

Voto particular explicativo emitido por el Juez Asociado Señor Rebollo López.

Aun cuando, naturalmente, reconocemos y respetamos el derecho de cualquiera de los compañeros Jueces a expresar lo que a bien tengan sobre un asunto en particular, *somos del criterio que ello debe hacerse únicamente en situaciones en que existe un "caso y controversia".* Véase *E.L.A. v. Aguayo,* 80 D.P.R. 552 (1958).

Es por ello que, a nuestra manera de ver las cosas, las expresiones del compañero Juez Alonso Alonso —las cuales suscribe el Juez Asociado Señor Fuster Berlingeri— sobre la validez de la disposición de la Ley Núm. 11 de 2 de junio de 1993 (4 L.P.R.A. secs. 1–2, 35, 37, 61, 121, 231 y 301), que establece que este Tribunal deberá exponer las razones, o fundamentos, que motivan la denegatoria de las solicitudes de revisión en casos civiles, *son unas hechas a destiempo e innecesarias por cuanto no existe en este mo-*

*mento ante el Tribunal planteamiento o controversia alguna al respecto*; razón por la cual no consideramos procedente, en este momento, emitir criterio, *vinculante y final*, referente a este asunto.

Ahora bien, resulta verdadera y realmente imposible "cruzarnos de brazos" y permanecer en silencio ante unas expresiones y fundamentos tan equivocados; posición que, de no ser refutada, puede ser malinterpretada como correcta. Es por ello que, *a riesgo de poder ser igualmente criticados*, hemos considerado necesario expresar las razones por las cuales consideramos totalmente errados *los fundamentos* que aducen estos dos (2) integrantes del Tribunal en apoyo de la firme posición que hoy asumen respecto a esta cuestión.

## I

Una somera lectura de la ponencia del Juez Alonso Alonso, que suscribe el Juez Fuster Berlingeri, revela que son *dos (2)* los fundamentos que, de manera principal, aducen éstos en apoyo de la posición de que la mencionada disposición estatutaria sería inconstitucional de ser interpretada como que es de carácter "mandatorio". A juicio de éstos, *en primer lugar*, la referida disposición de ley impone "una condición sobre el proceso decisorio" del Tribunal Supremo de Puerto Rico, cuya facultad para interpretar la Constitución y las leyes del Estado Libre Asociado de Puerto Rico, y para decidir controversias al amparo de las mismas, es una suprema y plena que no puede estar sujeta a cortapisas estatutarias; razón por la cual, *conforme al criterio de los dos (2) mencionados Jueces*, la citada disposición legal *interfiere con la "independencia del poder judicial"*.

Dicha conclusión es *totalmente errónea*; ello en vista del hecho de que la disposición en controversia *lo único que hace es establecer un requisito de forma*. Esto es, la misma

*no establece* cuáles deben ser los criterios a ser utilizados por el Tribunal en la expedición o denegación de un recurso de revisión *como tampoco establece* cómo debe ser, o llevarse a cabo, el proceso decisorio del Tribunal. *En otras palabras*, el Tribunal continúa teniendo la *libertad absoluta* para llegar a las conclusiones que en derecho y justicia entienda procedentes y para decidir la forma y manera en que llega a dichas conclusiones. *La independencia y voluntariedad del poder decisorio del Tribunal quedan inalteradas.* Lo que la Asamblea Legislativa ha establecido es un *formato* mediante el cual el Tribunal *transmite el resultado* al que de forma libre y voluntaria ha llegado.

En este aspecto, no puede perderse de vista la máxima a los efectos de que "el que puede lo más, puede lo menos". La Asamblea Legislativa tiene el poder y facultad incuestionable de establecer el derecho de apelación en casos civiles. Si así lo hiciera, el Tribunal *vendría obligado* a resolver el caso en los méritos *mediante la emisión de una sentencia escrita*, en la cual *tiene* que explicar los fundamentos para la decisión emitida. La Legislatura fue del criterio que ello no era necesario; que era suficiente con que el Tribunal explicara, *en la forma que entendiera procedente*, su denegatoria para expedir el recurso de revisión. Ello, ciertamente, *no* atenta contra la independencia del Poder Judicial por cuanto no interfiere o afecta, de forma alguna, el proceso decisorio de los integrantes del Tribunal; éstos meramente tienen que *plasmar por escrito* los fundamentos que tuvieron para denegar el recurso radicado.

## II

Señalan, *en segundo término*, los Jueces Alonso y Fuster que el requisito en controversia *interfiere con la facultad, constitucional y exclusiva, del Tribunal Supremo para adoptar reglas para su "funcionamiento"*. Añaden que el "no ha lugar" "forma parte inherente y va al corazón

mismo del proceso decisorio" del Tribunal. (Énfasis suprimido.) Voto particular de conformidad del Juez Asociado Señor Alonso Alonso, pág. 664.

La facultad del Tribunal a la que hacen referencia los mencionados magistrados tiene "su origen" en las disposiciones de la Sec. 4 del Art. V de nuestra Constitución, la cual dispone que el "el Tribunal Supremo *funcionará* bajo reglas de su propia adopción". (Énfasis suplido.) L.P.R.A., Tomo 1, ed. 1982, pág. 356.

En relación con dicha disposición constitucional, la Comisión de la Rama Judicial de la Convención Constituyente señaló —el cual señalamiento constituye el "único historial" de la misma— que la referida disposición

> ...concede al Tribunal Supremo la facultad ... *de funcionar bajo reglas de su propia adopción en tribunal pleno o dividido en salas.* No importa el número de jueces de que se componga una sala, todas las decisiones del Tribunal Supremo *habrán de adoptarse por mayoría de todos los miembros hábiles,* dentro y fuera de la sala, para entender en la causa. Esto *se aplica también* cuando el Tribunal funciona en pleno. (Énfasis suplido.)[1]

De lo anteriormente transcrito se desprende, con meridiana claridad, que la citada Sec. 4 del Art. V de la Constitución, *al utilizar el vocablo "funcionará",* se refiere propiamente a la *forma y manera* en que los integrantes del Tribunal colectivamente *han de llevar a cabo su función adjudicadora interna.*

Esa prerrogativa constitucional de determinar, *mediante reglas de su propia adopción,* su función adjudicativa interna *no es afectada* en forma alguna por la exigencia estatutaria *de que el producto de esa función o labor deba ser comunicado a las partes siguiendo determinado formato*; ello en vista del hecho incuestionable de que el requisito de explicar lo resuelto *es uno que opera con posterioridad al ejercicio del poder decisorio.*

---

[1] Informe de la Comisión de la Rama Judicial a la Comisión Constituyente, 4 Diario de Sesiones de la Convención Constituyente 2612 (1951).

No le puede asistir la razón, en consecuencia, a aquel que sostiene que el no ha lugar "forma parte inherente y va al corazón mismo del proceso decisorio". Voto particular de conformidad, pág. 664. El "no ha lugar" es meramente un *mecanismo* que utiliza el Tribunal *para comunicar* a las partes *el resultado o producto* de la función adjudicadora *ya concluida* y al cual llegó de forma libre, objetiva e independiente conforme lo establecido por las reglas para el *funcionamiento interno* que el Tribunal adoptó.

## III

Por último, y aun cuando entendemos el temor de algunos de que la referida disposición de ley —aun cuando realmente inofensiva— pueda representar el inicio de una tendencia de intromisión por parte de las otras dos (2) Ramas de Gobierno en los asuntos de la Rama Judicial, *rechazamos dicha preocupación.* El Tribunal Supremo de Puerto Rico, como último y máximo intérprete de la Constitución y de las leyes del Estado Libre Asociado de Puerto Rico, *siempre* estará en posición de impedir cualquier intento de las ramas políticas del Gobierno de inmiscuirse en el ámbito y prerrogativas de la Rama Judicial mediante una acción que en efecto constituya una intromisión o interferencia indebida con la independencia del Poder Judicial o con las prerrogativas y funciones constitucionales de este Tribunal. *Ese, no debe haber la menor duda, es nuestro compromiso personal e inquebrantable.*

Somos del criterio, en conclusión, que el requisito de forma de tener que explicar nuestras decisiones a las partes *no* constituye interferencia indebida e impropia con nuestra independencia de criterio y poder decisorio. Por el contrario, el mismo ayuda a mejorar la imagen de este Tribunal ante nuestros conciudadanos.

## – O –

Voto particular de conformidad del Juez Asociado Señor Alonso Alonso sobre el no ha lugar explicado, al cual se une el Juez Asociado Señor Fuster Berlingeri.

La ley que suprimió el Tribunal de Apelaciones (Ley Núm. 11 de 2 de junio de 1993) en su Art. 4(c), del Apartado (1), 4 L.P.R.A. sec. 121, dispone que el Tribunal Supremo de Puerto Rico *expondrá las razones que motivan la denegatoria de las solicitudes de revisión presentadas en este Tribunal.*

Entiendo que la práctica judicial más correcta hacia la ciudadanía es la de explicar las razones que, en derecho, llevan a este Tribunal a denegar las solicitudes de revisión que nos son presentadas. Por ello, durante el tiempo en que he sido parte de éste, he favorecido y abogado para que el Tribunal explique las razones que lo llevan a denegar la expedición de los recursos que se presentan. Lo continúo favoreciendo, y me satisface que antes de que la disposición de ley mencionada entre en vigor, ya el Tribunal esté explicando el no ha lugar.

No obstante lo anterior, debo aclarar que entiendo que la disposición legal referida debe ser considerada por este Tribunal sólo *como una disposición de carácter directivo y no mandatoria, pues de lo contrario, resultaría inconstitucional.* Ésta no puede constituir una privación a este Tribunal de su poder expreso e inherente de utilizar el mecanismo decisorio que la prudencia judicial le dicte como el más apropiado para disponer en derecho de un recurso, en consideración a los méritos y las cuestiones planteadas en él.

En primer lugar, hay que destacar que la disposición de ley referida no va encaminada a darle un mandato e imponerle condiciones sobre el proceso decisorio a un tribunal *creado por ley,* sino al Tribunal Supremo, cuya creación,

composición, funcionamiento y facultades están estableci-
das y se rigen por la Constitución del Estado Libre Aso-
ciado de Puerto Rico, no mediante una ley.

Este Tribunal es la autoridad suprema para interpretar
la Constitución y las leyes, decidir casos y controversias, y
dentro de su órbita de facultades constitucionales expresas
e inherentes, nuestra autoridad es plena y no está sujeta,
ni puede estarlo, a ningún mandato por parte de la Asam-
blea Legislativa.

La intromisión de otra Rama de Gobierno, dentro de las
facultades expresas e inherentes de este Tribunal, choca
contra las bases de nuestro ordenamiento jurídico-
constitucional. *Cf. Santa Aponte v. Srio. del Senado*, 105
D.P.R. 750 (1977); Conferencia Judicial de Puerto Rico, *La
Independencia Judicial en Puerto Rico*, San Juan, [s. ed.],
1988.

La trayectoria histórica de nuestros pronunciamientos
judiciales es clara: cualquier intromisión de los demás Po-
deres del Gobierno, que afecten los poderes expresos o in-
herentes de este Foro, ha sido reiteradamente rechazada o
tomada como directiva o suplementaria. *In re Calderón
Lassén*, 88 D.P.R. 931 (1963); *Ex parte Jiménez*, 55 D.P.R.
54 (1939); *González v. Tribunal Superior*, 75 D.P.R. 585
(1953); *Colegio de Abogados de P.R. v. Barney*, 109 D.P.R.
845 (1980); *In re González Blanes*, 65 D.P.R. 381 (1945); *In
re Tormes*, 30 D.P.R. 267 (1922); *Claudio v. Ortiz*, 29 D.P.R.
435 (1921); *In re Bosch*, 65 D.P.R. 248, 251 (1945); *Torres v.
Castillo Alicea*, 111 D.P.R. 792 (1981); *Colón v. Municipio
de Guayama*, 114 D.P.R. 193 (1983), entre otros.

La letra y el entretejido de nuestra Constitución, el his-
torial de la Convención Constituyente, así como preceden-
tes anteriores de este Tribunal, han delineado claramente
las funciones expresas e inherentes de este Tribunal, y su
independencia judicial frente a las Ramas políticas de
Gobierno. 1 Diario de Sesiones de la Convención Constitu-
yente 452–454 y 771–772 (1952). Véanse: *La independen-*

*cia judicial en Puerto Rico, op. cit.*; *Santa Aponte v. Srio. del Senado*, supra; *Silva v. Hernández Agosto*, 118 D.P.R. 45 (1986); *Betancourt v. Gobernador*, 119 D.P.R. 435, 436–444 (1987), opinión concurrente; *In re Solicitud Cepeda García*, 130 D.P.R. 18 (1992).

Un examen de todas las disposiciones de nuestra Constitución y de la interrelación de unas con otras, y del Art. 5 sobre el Poder Judicial, Const. E.L.A., L.P.R.A., Tomo 1, así lo avalan.

Específicamente, la Sec. 4 del Art. 5 de nuestra Constitución dispone que:

> *El Tribunal Supremo funcionará bajo reglas de su propia adopción* .... (Énfasis suplido.) Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 356.

El poder de este Tribunal de adoptar reglas para su funcionamiento es prerrogativa *exclusiva* de este Foro.

El no ha lugar, al igual que la determinación de cuáles decisiones deben formularse como opinión del Tribunal, como sentencia o como resolución, *forma parte inherente* y va al corazón mismo *del proceso decisorio* de este Tribunal y a su estructuración y funcionamiento interno. Por ello nuestra facultad constitucional al respecto es exclusiva. *Pérez Aldarondo v. Tribunal Superior*, 102 D.P.R. 1 (1974); *Pueblo v. Cortés Burgos*, 100 D.P.R. 933 (1972), voto concurrente del Juez Asociado Señor Martínez Muñoz.

Es prerrogativa de este Tribunal el autorreglamentarse y adoptar aquellos mecanismos que estime apropiados con el fin de cumplir con sus obligaciones constitucionales de la forma que estime más adecuada y eficiente. Como expresara el Lcdo. Ernesto Ramos Antonini, Presidente de la Comisión de la Asamblea Constituyente sobre la Rama Judicial: "El propósito de eficiencia en la organización y funcionamiento de la rama judicial, está íntimamente vinculado y depende fundamentalmente, en lo que toca a la rama judicial, repito, *de la independencia del poder judicial* . Esa independencia a que propende la proposición sus-

tituta, como ideal en la organización de la estructura de gobierno que vamos a crear y dada la función del poder judicial, cual es la de garantizar en nuestra vida política, social y económica *un régimen de derecho a diferencia de un régimen de fuerza o de hombres.*" (Énfasis suplido.) Diario de Sesiones, *supra,* Vol. 1, pág. 452. Sobre el particular, véase nuestras expresiones en *Negrón Soto v. Gobernador,* 110 D.P.R. 664, 665 (1981).

Corresponde a este Tribunal la última decisión acerca de si debe o no explicar todas sus decisiones y en qué forma, en consideración a los méritos que presenta un recurso y en función de su facultad expresa e inherente de autorreglamentarse y de descargar sus facultades ágil y eficientemente.

Por ello, entiendo que la disposición de la ley que suprime al Tribunal de Apelaciones y que dispone que debemos explicar la denegación de las solicitudes de revisión *es de naturaleza directiva y no mandatoria. De lo contrario, sería inconstitucional.*